# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
February 13, 2012

Lyle W. Cayce
Clerk

No. 10-11177

JOSE ELIZONDO; ALICIA ELIZONDO, Individually and as Representatives of the Estate of Ruddy Elizondo,

Plaintiffs - Appellants

v.

W. M. GREEN, Officer,

Defendant - Appellee

Cons w/ No. 11-10309

JOSE ELIZONDO; ALICIA ELIZONDO, Individually and as Representatives of the Estate of Ruddy Elizondo,

Plaintiffs - Appellants

v.

THE CITY OF GARLAND,

Defendant - Appellee

Appeals from the United States District Court
for the Northern District of Texas

Before DeMOSS, CLEMENT, and ELROD, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

No. 10-11177

Jose and Alicia Elizondo (the "Elizondos"), individually and on behalf of the estate of Ruddy Elizondo ("Ruddy"), appeal from two separate district court orders granting summary judgment to Officer W.M. Green and the City of Garland, Texas (the "City"), on their claims pursuant to 42 U.S.C. § 1983 that Green used excessive force against Ruddy in violation of the Fourth Amendment. We affirm.

FACTS AND PROCEEDINGS

The material facts are not in dispute. On March 18, 2009, Ruddy Elizondo, a 17-year-old, came home at around midnight after a night out with friends. Ruddy had been drinking and was emotional. He began playing loud music in his bedroom, called a friend on the phone, and went out to the front porch. Ruddy's mother, Alicia Elizondo, who had been asleep, got up and told Ruddy to go to bed. After Ruddy had returned to his room, his mother heard him crying. She went to check on him and found him holding a knife to his abdomen. Ruddy had attempted suicide by stabbing himself just over a month earlier, so Alicia was understandably concerned. She began to cry and plead with Ruddy. The commotion woke Claudia Elizondo, Ruddy's sister, who called 911 because she was afraid Ruddy might hurt their mother, who was trying to take the knife away from Ruddy.

Green, who was on patrol nearby, received a dispatch that a man had stabbed himself and needed medical attention. The dispatcher mistakenly informed Green that Ruddy had already stabbed himself and the knife was still lodged in his abdomen. On this information, Green went to the house to clear and secure the scene for the paramedics. When he arrived at the house, Alicia directed Green to Ruddy's room, where he found Ruddy unhurt and still holding the knife to his stomach. Green drew his weapon, backed out of Ruddy's room, and repeatedly ordered him to put down the knife. Ruddy refused to comply. He tried to close the door on Green, but Green did not let him. Several times, Ruddy

No. 10-11177

cursed at Green and yelled, "Fucking shoot me." Green told Ruddy that he did not want to shoot him, but that he would be forced to if Ruddy came any closer. Despite Green's warning, Ruddy moved closer to Green and raised the knife in a threatening motion.[1] Green fired his gun three times, hitting Ruddy in the chest, shoulder and abdomen. Green immediately called in the paramedics, who had been waiting outside, but Ruddy died from his wounds.

The Elizondos brought suit against Green and the City[2] in Texas state court, asserting an excessive force claim under § 1983 and various state law tort claims. Green removed the case to federal district court. The district court eventually dismissed all of the state law claims against both defendants, and the Elizondos have not appealed those dismissals. After limited discovery, Green moved for summary judgment on the ground that he was entitled to qualified immunity on the Elizondo's excessive force claim. On October 18, 2010, the district court granted Green's motion, based on its determination that Green had not committed a constitutional violation, and dismissed all claims against the officer. At that time, the City had not yet moved for summary judgment. The Elizondos filed a notice of appeal on November 17, 2010, seeking review of the district court's October 18 summary judgment order.

Thereafter, the City filed its own motion for summary judgment. On March 9, 2011, while the Elizondos' first appeal was pending, the district court granted summary judgment in favor of the City. On March 23, 2011, the Elizondos filed a second notice of appeal, specifying the order granting summary judgment in favor of the City, and shortly thereafter filed a motion to consolidate

---

[1] The Elizondos argue in their appellate briefs that Ruddy never raised the knife, but they fail to cite any record evidence that contradicts Green's statements on this fact. Neither Alicia nor Claudia saw whether Ruddy raised the knife or not.

[2] The Elizondos originally named the Garland Police Department as a defendant, but later amended its complaint to properly name the City.

No. 10-11177

the two appeals, Nos. 10-11177 and 11-10309, which we granted on March 29, 2011.

STANDARD OF REVIEW

We review a grant of summary judgment *de novo*, applying the same standard as the district court. Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and shows that the moving party is entitled to judgment as a matter of law. *See Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 377 (5th Cir. 2010).

DISCUSSION

Before considering the merits, we must address our jurisdiction to hear these appeals. The parties agree that the Elizondo's March 23, 2011 notice of appeal was timely and effective, meaning that the district court's grant of summary judgment in favor of the City is properly before us. The parties do not agree, however, on the effect of the Elizondos' November 17, 2010 notice of appeal, which sought review of the district court's grant of summary judgment in favor of Green.

Green argues that the district court's grant of summary judgment in his favor on qualified immunity grounds was not immediately appealable because it was not a final order. An order is final and appealable when it ends the litigation and leaves nothing for the court to do but execute the judgment. *United States v. Garner*, 749 F.2d 281, 285 (5th Cir. 1985); 28 U.S.C. § 1291. A dismissal of claims against some, but not all, defendants is not a final appealable judgment unless, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the district court concludes that there is no justification for delaying an appeal and specifically directs entry of judgment. Green is correct that the district court's October 18, 2010 order did not bring an effective end to the litigation and

4

No. 10-11177

was not final and appealable. *See Dillion v. Miss. Military Dep't*, 23 F.3d 915, 917 (5th Cir. 1994).

Nor was the October 18 order subject to the collateral order doctrine. "Pursuant to the collateral order doctrine, a litigant may immediately appeal a collateral order if the order (1) conclusively determines the disputed question, (2) resolves an important issue completely separate from the merits of the action, and (3) is effectively unreviewable on appeal from a final judgment." *In re Bradford*, 660 F.3d 226, 228 (5th Cir. 2011) (internal quotation marks omitted). An order *denying* qualified immunity in a § 1983 action is immediately appealable under the collateral order doctrine to the extent that it turns on a question of law rather than a factual dispute, *Short v. West*, 662 F.3d 320, 325 (5th Cir. 2011), but the same does not hold for an order *granting* qualified immunity. An order granting immunity can be fully and fairly reviewed after a final judgment. *See Thompson v. Betts*, 754 F.2d 1243, 1246 (5th Cir. 1985); *Terrell v. City of El Paso*, 176 F. App'x 623, 624 (5th Cir. 2006) (per curiam) (unpublished). The Elizondos' first notice of appeal therefore failed to give this court jurisdiction to consider the district court's order granting summary judgment to Green.

There is arguably some support for the contention that the Elizondos' second notice of appeal brought both of the district court's summary judgment orders under our review, even though it specifically designated only the district court's March 9, 2011 order granting summary judgment to the City. Rule 3(c) of the Federal Rules of Appellate Procedure requires the appellant to "designate the judgment, order, or part thereof being appealed" in the notice of appeal, but we have previously stated that

> [w]hile the requirements of Rule 3(c) are jurisdictional, and noncompliance is fatal to an appeal, . . . . [a] mistake in designating orders to be appealed does not bar review if the intent to appeal a

5

particular judgment can be fairly inferred and if the appellee is not prejudiced or misled by the mistake.

*N.Y. Life Ins. Co. v. Deshotel*, 142 F.3d 873, 884 (5th Cir. 1998) (internal citations and quotation marks omitted). It is questionable whether the Elizondos' failure to designate the district court's October 18 order in their second notice of appeal constitutes the type of non-prejudicial "mistake" discussed in *Deshotel*, but we need not decide that question. The Elizondos, adamant that their first notice of appeal was proper, do not argue that their second notice of appeal succeeded in bringing the district court's October 18 order within our appellate jurisdiction, and any such argument is therefore forfeited. *See, e.g.*, *United States v. Banks*, 624 F.3d 261, 264 (5th Cir. 2010). Thus, we consider only the district court's grant of summary judgment to the City.

Turning to the merits of the appeal, the only issue before us is whether, viewing the evidence in the light most favorable to the Elizondos, Green used excessive force against Ruddy. Excessive force claims are analyzed under the reasonableness standard of the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). The district court based its grant of summary judgment in favor of the City on the conclusion that Green's actions were reasonable and that, as a result, no constitutional violation occurred.

To establish the use of excessive force in violation of the Constitution, a plaintiff must prove: "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Collier v. Montgomery*, 569 F.3d 214, 218 (5th Cir. 2009). The use of deadly force is constitutional when the suspect poses a threat of serious physical harm to the officer or others. *See Tennessee v. Garner*, 471 U.S. 1, 11 (1985). In analyzing the reasonableness of the specific use of force, courts must consider the totality of the circumstances surrounding the officer's decision. *See Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008).

No. 10-11177

We agree with the district court's conclusion that Green's use of deadly force was not clearly unreasonable. Ruddy ignored repeated instructions to put down the knife he was holding and seemed intent on provoking Green. At the time Green discharged his weapon, Ruddy was hostile, armed with a knife, in close proximity to Green, and moving closer. Considering the totality of the circumstances in which Green found himself, it was reasonable for him to conclude that Ruddy posed a threat of serious harm. Finally, in the absence of a constitutional violation, there can be no municipal liability for the City. *See, e.g.*, *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009).

## CONCLUSION

For the reasons stated above, we affirm the district court's grant of summary judgment to the City.

No. 10-11177

Judge Harold R. DeMoss, Jr., specially concurring:

I join the majority opinion in full because, under the current state of our law, the panel is correct in its legal judgments with respect to jurisdiction and liability. However, I once again feel compelled to write separately to express my disapproval of and disappointment with the actions of the City of Garland police department.

We decide this case less than two months after a separate panel on which I sat issued similar opinions in the equally tragic case of *Rockwell v. Brown*, 664 F.3d 985 (5th Cir. Dec. 15, 2011) (DeMoss, J., specially concurring). In *Rockwell*, six City of Garland police officers responded to a domestic disturbance where Scott Rockwell, a diagnosed bipolar schizophrenic who had previously attempted suicide, was ranting and raving alone in his room. *Id.* He had threatened—but not harmed—his parents earlier that night, and was barricaded in his room when the officers arrived. *Id.* Yet in less than 30 minutes the officers armed themselves, ignored the parents' request to give Scott time to calm down, broke down his bedroom door, provoked a knife attack, and shot him four times. *Id.* It was the officers' job to prevent violence or suicide, yet they quickly escalated the situation to the point where they were legally justified to use deadly force against a mentally ill person who obviously needed help. *Id.*

Sadly, Ruddy Elizondo's case is very similar to *Rockwell*. I firmly believe that Officer Green "should have been trained to use better judgment in [his] approach to volatile and unfortunate situations such as this one." *Id.* Officer Green was a very large man highly trained in self defense and armed with a night stick, taser, and firearm, while Ruddy was a short and obese teenager who was distraught, intoxicated, and contemplating suicide with a relatively small knife. Moreover, Officer Green had only been on the scene for a few seconds, backup was on the way, and emergency medical personnel was waiting outside

No. 10-11177

when the shooting occurred. Deadly force should have been Officer Green's very last resort rather than his first reaction.

Presumably Officer Green followed standard police protocol for domestic disturbances where a knife is involved, so I focus my criticism specifically at the City of Garland police department's training and tactical response programs. There must be effective ways for police officers to resolve volatile situations that avoid threatening or using deadly force.[1] Forcing Ruddy's bedroom door open, yelling orders at him, and immediately drawing a firearm and threatening to shoot was a very poor way to confront the drunk, distraught teenager who was contemplating suicide with a knife.

Either law enforcement procedures or our law must evolve if we are to ensure that more avoidable deaths do not occur at the hands of those called to "protect and serve." Saving lives remains job number one for every law enforcement agency, and it is imperative that they have better procedures in place to deal with those persons who are young, intoxicated, mentally ill, or otherwise likely to react poorly in already volatile situations. I firmly believe that the light of public concern must be shined on tragic cases such as Scott Rockwell's and Ruddy Elizondo's if more deaths are to be prevented. Hopefully publication of this opinion will help to compel the City of Garland police department—and all law enforcement agencies—to re-evaluate their training and response procedures so that the use of deadly force remains the last resort in every situation.

---

[1] In *Rockwell* I suggested several options including those less-than-lethal tactics currently used in prisons and with wild animals. In Ruddy's case it seems that trying to defuse the situation by talking calmly, clearing the house, and waiting for backup may have been even more effective, especially since there is no indication that Ruddy had committed a crime or was threatening violence to others such that he needed to be taken into custody immediately.