# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

August 12, 2015

Lyle W. Cayce
Clerk

No. 14-31076

NIKKI MCCOY SMALL, on behalf of R. G., on behalf of K. G., on behalf of
Richard Goss Estate, also known as N. S.,

     Plaintiff–Appellant

v.

CITY OF ALEXANDRIA; CLIFTON FAIRBANKS, an individual employed by
the City of Alexandria as an officer of the Alexandria Police Department;
DARREN COUTEE, an individual employed by the City of Alexandria as the
Chief of Police for the Alexandria Police Department; POLICE
DEPARTMENT OF ALEXANDRIA,

     Defendants–Appellees

Appeal from the United States District Court
for the Western District of Louisiana
USDC. No. 1:09-CV-779

Before JONES, BARKSDALE, and PRADO, Circuit Judges.

PER CURIAM:*

     This case presents tragic facts. Officer Clifton Fairbanks fatally shot
Richard Goss in his Alexandria, Louisiana, motel room. Goss's girlfriend had
called an ambulance for Goss, who she said was intoxicated, and Fairbanks

---

\* Pursuant to 5th Cir. R. 47.5, the Court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5th Cir.
R. 47.5.4.

No. 14-31076

went to assist. Fairbanks testified that while he was assessing the scene, Goss reached under his bed as if to obtain a weapon. Fairbanks, with gun drawn, ordered Goss multiple times to put up his hands, but Goss did not. Fairbanks shot Goss three times, killing him.

Goss's next of kin sued Fairbanks for damages from Goss's death under 42 U.S.C. § 1983 for a Fourth Amendment violation. Small appeals the district court's summary judgment for Fairbanks on the excessive-force claim, among others. We affirm.

## I. FACTUAL BACKGROUND

The case arises from the shooting death of Richard Goss. Goss and his girlfriend, Darnell Willis, rented a motel room as their domicile.[1] On November 26, 2008, Willis called 911 to obtain an ambulance for Goss, stating that he was intoxicated and she needed assistance. Willis explained that Goss was not trying to harm anyone or himself. Nevertheless, dispatch categorized Goss to responders as suicidal.

An ambulance, manned by emergency medical technicians (EMTs) Russell Boney and Joshua Tam, and Fairbanks were dispatched to the location.[2] The EMTs parked down the road from the motel until Fairbanks pulled into the motel parking lot. They followed Fairbanks around to the back, where Goss's room was located. Fairbanks parked near Goss's door, and the EMTs parked about seventy yards back to wait for Fairbanks to call them over.

---

[1] Because we are reviewing the district court's grant of summary judgment to Fairbanks, the facts are presented in the light most favorable to Small. Where there is conflicting evidence, we note the discrepancy.

[2] In Alexandria, police often accompany ambulances to scenes when they believe police assistance is necessary.

No. 14-31076

Fairbanks knocked on Goss's door and told Willis to exit the room.[3] Willis told Fairbanks that she was fine but said that Goss had been drinking and was "tripping." Willis then went to the parking lot. Fairbanks stood in the doorway and briefly spoke to Goss before motioning for the EMTs to come to the room. The EMTs entered the room while Fairbanks remained in the doorway. Goss was sitting in the middle of the bed and "rambling." After the EMTs entered, Goss "sat up real straight in the bed and pointed up and said, see there that's why you always have to be aware of your surroundings." Boney suspected that Goss had been drinking because a nearly empty bottle of liquor was on the table. The EMTs then left the room to gather more information from Willis. As Boney exited, he saw Goss move from the center of the bed toward the left of the bed, near the headboard.[4] Willis told Boney that Goss had been in rehab and recently started drinking again and that she could no longer "deal with him" in that state.

Boney then returned to the door of Goss's room, where Fairbanks had remained in the doorway. Boney leaned up against the exterior wall of the motel to face Fairbanks. From this position, Boney could not hear or see Goss inside of the room. Boney told Fairbanks that Goss was "just drunk . . . He's not threatening anybody. I don't know . . . what I can do with him." Fairbanks stated they would wait for his supervisor, then-Corporal Kenneth Rachal, to arrive.

Because Boney could not hear or see inside of the motel room, Fairbanks's testimony is the only evidence about Goss's behavior at the

---

[3] This is what Boney told police after the shooting. At his deposition, Boney stated he could not remember if Willis had already left the room when Fairbanks arrived but admitted that the police statement was probably more accurate. Fairbanks testified that Willis was "hurriedly" walking out of the room as he approached.

[4] The bed was left of the door, with the left side of the bed parallel to the exterior wall. A small nightstand was between the bed and the exterior wall.

moment of the shooting. Nothing up to this point indicated to Fairbanks that Goss was suicidal. Fairbanks asked Goss what the problem was, and Goss made various statements: "stay alert," "stay alive," "Double Chevron Man," "[w]atch your situational awareness," and "you got your weapon, I got mine too."" Goss continued to scoot towards the head of the bed.

Fairbanks then asked Willis, who was standing outside of the room, whether there were any weapons inside or if Goss had a weapon. He did not hear Willis reply, but he heard Goss say, "I got mine, too."[5] As Goss said this, he moved toward the left side of the bed. Goss reached the side of the bed and moved his right hand downward toward the bottom of the top mattress. Boney heard Fairbanks yell "get your hands up" numerous times. At this point, Fairbanks drew his weapon. Fairbanks said, "Don't do it," but Goss did not stop moving. Fairbanks then fired his weapon three times.[6] He fired two shots in rapid succession, moved for cover to the doorway, and then fired a third. The third shot occurred "seconds" after the first.

During this time, Corporal Rachal had arrived on scene. Rachal cleared the room after Fairbanks stopped shooting. He did not find a weapon underneath the mattress. Rachal called in the EMTs. Goss's pulse ceased within twenty to thirty seconds of the EMTs' arrival.

## II. PROCEDURAL BACKGROUND

On behalf of her children from Goss, Small sued[7] Fairbanks, among others. Against Fairbanks, Small raised substantive-due-process and Fourth

---

[5] Fairbanks later testified that Goss said, "Yeah, I got mine right here."

[6] Fairbanks testified that he fired two consecutive shots then, after a pause, a third. He said that he fired the third shot "because [Goss] moved." *Id.*

[7] Small also named as defendants the City of Alexandria, the Alexandria Police Department, and the former police chief, Darren Coutee. The district court granted summary judgment to these defendants. Small appeals only the grant of summary judgment for Fairbanks.

No. 14-31076

Amendment excessive-force and unlawful-arrest claims, as well as violations of the Louisiana constitution and tort claims. In his answer, Fairbanks asserted the affirmative defense of qualified immunity. Fairbanks moved for summary judgment on all claims. The district court granted the motions and dismissed the case. Small timely appeals summary judgment for Fairbanks on the Fourth Amendment excessive-force claim.[8]

## III. DISCUSSION

We have jurisdiction over this appeal of the district court's final judgment under 28 U.S.C. § 1291. We review de novo a district court's grant of summary judgment, viewing "all facts and evidence in the light most favorable to the non-moving party." *Juino v. Livingston Par. Fire Dist. No. 5*, 717 F.3d 431, 433 (5th Cir. 2013). We apply the same standard as the district court in the first instance. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The movant has the burden of showing that there is no genuine issue

---

[8] Small has not briefed the unlawful-arrest or state-law claims against Fairbanks. Thus, she has abandoned these claims. *See Yohey v. Collins*, 985 F.2d 222, 224–25 (5th Cir. 1993).

Small's brief purports to raise a second issue: "[T]he district court erred [in] its summary judgment analysis by viewing the facts . . . in a light most favorable to the moving party, i.e., defendant Fairbanks." But in this section Small does not explain how the district court's view of the facts affected its legal conclusions, rather she argues that we should allow her to supplement the record with Willis's affidavit. We AFFIRM the motion panel's denial of Small's motion to supplement the record.

of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict." *Anderson*, 477 U.S. at 256.

The doctrine of qualified immunity "protects public officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Brown v. Strain*, 663 F.3d 245, 249 (5th Cir. 2011) (internal quotation marks omitted). "[T]he qualified immunity inquiry has two prongs: (1) whether an official's conduct violated the plaintiff's constitutional rights, and (2) whether the right violated was clearly established at the time of the violation." *Poole v. City of Shreveport*, 691 F.3d 624, 637 (5th Cir. 2012) (footnote omitted). "Courts may exercise their discretion in deciding which question to answer first." *Id.* at 637–38.

To prevail on a Fourth Amendment excessive-force claim, a plaintiff "must establish (1) an injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Ontiveros v. City of Rosenberg, Tex.*, 564 F.3d 379, 382 (5th Cir. 2009) (internal quotation marks omitted). The use of deadly force "is presumptively reasonable when the officer has reason to believe that the suspect poses a threat of serious harm to the officer or to others." *Id.*

We judge the reasonableness of the use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). In performing the reasonableness inquiry, Courts "thus 'allo[w] for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'" *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2020 (2014) (quoting *Graham*, 490 U.S. at 396–97) (alteration in original).

In *Ontiveros*, we affirmed summary judgment on similar facts for an officer who shot and killed a suspect who ignored orders to put up his hands and reached inside a boot. 564 F.3d at 381. The officer in *Ontiveros* was the only person who witnessed the events immediately surrounding the shooting. *Id.* at 383. The officer stated that he ordered the suspect, who was behind a door, to show his hands. *See id.* at 381, 383. According to the officer, the suspect then reached into a boot that the officer believed could contain a weapon. *See id.* at 381. The officer then shot the suspect twice in the chest. *Id.* The plaintiffs argued that circumstantial evidence, including "the short time frame covering the events in question, the location of [the suspect's] boots, and the position of [the suspect's] body when he was shot" would allow a reasonable jury to conclude the officer was lying. *Id.* at 383. We disagreed and affirmed summary judgment for the officer. *Id.* at 385–86.

Moreover, we have affirmed summary judgment for a city sued after an officer who used deadly force after being sent to aid a suicidal subject. In that case, dispatch sent an officer to aid a man who had allegedly himself in the stomach. *Elizondo v. Green*, 671 F.3d 506, 508–09 (5th Cir. 2012). Once on the scene, the officer discovered the dispatcher was mistaken—the man was "unhurt but still holding a knife to his stomach." *Id.* at 508. The officer pulled his weapon and ordered the man to put down the knife. *Id.* The man ignored the officer's repeated instructions. The man began moving toward the officer and raised the knife in a threatening motion, and the officer fired three shots, hitting the man in the chest. *Id.* We "agree[d] with the district court's conclusion that [the officer's] use of deadly force was not clearly unreasonable." *Id.* at 510.

The summary judgment evidence does not show that Fairbanks's use of force was clearly excessive. Like in *Ontiveros*, the only record evidence of Goss's behavior immediately prior to the shooting is the testimony of Fairbanks. He

stated that Goss indicated that he might have had a weapon and began to reach under the bed. Boney heard Fairbanks order Goss numerous times to put up his hands. Yet, as in *Ontiveros* and *Elizondo*, Goss, according to Fairbanks, continued to reach down the side of the bed. The only controverting evidence that Small points to is the affidavit of Willis, which is not in the record. Thus, Small provides no evidence from which a reasonable jury could infer that Fairbanks's shots were clearly excessive. *See Anderson*, 477 U.S. at 256 ("The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict.").

Small argues that the district court improperly made two factual inferences in Fairbanks's favor. First, she argues that the district court improperly credited Fairbanks's statement that he first encountered Willis as she was walking out of the motel room. This conflicts with Boney's testimony that he observed Fairbanks knock on the door and tell Willis to exit the motel room.[9] But even if Boney's description is taken as true, it does not call into question the reasonableness of Fairbanks's later use of deadly force. *Cf. Ontiveros*, 564 F.3d at 385 ("The issues raised by the Appellants do not create the kind of genuine dispute that can overcome summary judgment in excessive force cases involving police shootings.").

Second, Small argues that the district court improperly adopted Fairbanks's testimony that Goss made statements "such as 'stay alert,' 'stay alive,' 'big man huh,' 'Double Chevron man,' and 'Watch your situational awareness.'" Small argues that this conflicts with Boney's testimony. However, Boney stated that, once he exited the room to speak to Willis, he could no longer hear Goss's statements. Because no record evidence calls into question

---

[9] *See supra* note 3.

No. 14-31076

Fairbanks's testimony about Goss's behavior immediately prior to the shooting, Small has not raised a genuine issue of material fact as to whether Fairbanks violated his Fourth Amendment rights. Thus, Fairbanks is entitled to qualified immunity.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the district court.