## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-40698

ROBERT AYALA,

Plaintiff - Appellant

v.

ARANSAS COUNTY; ANTHONY CIARLETTA,

Defendants - Appellees

United States Court of Appeals
Fifth Circuit

**FILED**

July 2, 2019

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:15-CV-335

Before HAYNES, GRAVES, and HO, Circuit Judges.

JAMES E. GRAVES, JR., Circuit Judge:*

This is an appeal of the grant of summary judgment in a civil rights case brought under 42 U.S.C. § 1983. Plaintiff-Appellant Robert Ayala alleged Defendant-Appellee Deputy Anthony Ciarletta used excessive force against him by striking him with a flashlight during a response to a 911 medical call. Ayala also alleged Ciarletta subjected him to wrongful arrest. The district

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-40698

court granted summary judgment to Ciarletta on both counts. Finding no error, we affirm.

## I. BACKGROUND

### A. The Incident

On August 17, 2013, Ayala and his wife, Romanna LaCroix, hosted a dinner party at their home with two other couples. It was the type of dinner party with a multi-course meal, each course paired with a different alcoholic beverage. The party lasted until shortly before midnight, when one couple left and the second couple, Dr. Jeremy and Helena Mills, opted to stay the night. Dr. Mills went to bed around 2:00 or 2:30 a.m., but Ayala, LaCroix, and Mrs. Mills stayed up to visit and wash dishes.

Soon after Dr. Mills went to bed, Ayala decided to call 911 to get medical assistance for Dr. Mills. EMS never arrived, so Ayala called 911 a few hours later around 5:42 a.m. The 911 dispatcher sent EMS to Ayala's home, but based on Ayala's odd behavior on the phone, she also dispatched two deputies "to make sure EMS was not walking into something more than a normal EMS dispatch."

Deputy Ciarletta with the Aransas County Sheriff's Office was the first to arrive at the house around 5:59 a.m. Ciarletta's body camera captured the events that subsequently transpired; however, the video ended partway through, leaving only an audio recording of everything after.

The video shows a shirtless Ayala greeting Ciarletta outside his house. Instead of immediately letting Ciarletta inside, Ayala instructs Ciarletta to go around to the locked front door, which Ayala unlocks from inside approximately 40 seconds later. Once both men are inside, Ayala shows Ciarletta into the bedroom where Dr. Mills and his wife are situated. Ciarletta speaks briefly with the Mills, confirming Dr. Mills has no medical issues. Deputy Matthew Campbell arrives around this time and he and LaCroix go

into the kitchen to talk. Mrs. Mills informs Ciarletta that they did not call EMS and Ciarletta, with the Mills' approval, cancels the EMS call.

At this point, Ayala starts to enter the room, but Ciarletta intercepts him and takes him into another room to speak separately. In the dimly lit room, the following conversation takes place:

> **Ciarletta:** So they're – they're just arguing, that's it?
> **Ayala:** Say what?
> **Ciarletta:** I said they're just arguing; is that the problem here?
> **Ayala:** No, I would like to go over there and say something.
> **Ciarletta:** What – what do you want to say?
> **Ayala:** What is your problem?
> **Ciarletta:** You right now, because you're drunk and you're giving me a hard time.
> **Ayala:** Well, yeah, I am drunk, okay.
> **Ciarletta:** Yeah, and you're giving me a hard time for no reason. I'm asking what's going on and you're being a jerk.
> **Ayala:** Well, you're in my house.
> **Ciarletta:** I don't care whose house I'm in. Guess what, when I –
> **Ayala:** Well f--k you.
> **Ciarletta:** No, f--k you, asshole.
> **Ayala:** No, f--k you.
> **Ciarletta:** F--k you. Don't ever f--king point your finger at me again.

The video ends during Ciarletta's last statement but continues recording audio.[1] But before the video ends, it shows Ciarletta's hand holding a flashlight directly in front of the body camera. Ayala's partial outline can be seen fairly close to Ciarletta on his left. A noise can be heard, consistent with a flashlight strike, between "F--k you," and "Don't ever f--king point your finger at me again." Ayala then states twice, apparently in shock (or possibly anger), "You touched me," and Ciarletta heatedly reiterates, "I don't care. You don't point

---

[1] Ayala initially alleged that Ciarletta turned off the video-function on purpose. However, the parties no longer dispute that Ciarletta did not (and could not) intentionally turn off the video-function while leaving the audio-function on—meaning the camera simply malfunctioned.

your finger at an officer." The sounds of a physical altercation can then be heard. Ciarletta later says, "You don't ever f--king touch a cop."

Ciarletta denies hitting Ayala with his flashlight and contends that during the heated exchange, Ayala "forcibly placed his hands upon" Ciarletta and pushed him. In response, Ciarletta pushed him away and when it appeared that Ayala was going to come at him "in a forceful manner," Ciarletta "went hands on" with Ayala. According to Ciarletta, it was at this point that a "short scuffle" ensued and both Ciarletta and Ayala ended up on the ground. Ciarletta tried to handcuff Ayala, who he claims continued to resist, necessitating the assistance of Campbell. Campbell grabbed one of Ayala's arms and Ciarletta was then able to place Ayala in handcuffs Ayala was arrested and taken to the Aransas County Jail[2] and charged with assault of a public servant and resisting arrest, although the charges were later dismissed.

While Ayala alleged in his complaint that Ciarletta hit him in the head with a flashlight, Ayala cannot independently recall the encounter. He bases his allegation on the recollection of his treating physician, Dr. Christopher Lucci, who examined Ayala within a few days of the incident. Dr. Lucci asserted in an affidavit that during his examination of Ayala, Ayala told him that a police officer had hit him in the head with a flashlight.

## B. Procedural History

As relevant to this appeal, Ayala alleged Ciarletta violated his Fourth Amendment right to be free from excessive force and wrongful arrest.[3] Ciarletta asserted a defense of qualified immunity and the district court limited discovery to that issue.

---

[2] Ayala also alleged the deputies used excessive force by deploying a taser to "drive stun" him while trying to get Ayala into the deputies' car. The district court granted summary judgment to the deputies on that claim and it is not at issue on appeal.

[3] Ayala brought other § 1983 claims against Ciarletta, Campbell, and Aransas County. None of these claims or additional parties are at issue in this appeal.

No. 18-40698

Ciarletta filed his first motion for summary judgment, contending there was no evidence that he hit Ayala with a flashlight and that there was probable cause to arrest Ayala. The district court granted in part and denied in part Ciarletta's motion. As to the excessive force claim, the district court denied summary judgment, concluding there was a "genuine dispute regarding whether Ciarletta assaulted Ayala, with or without a flashlight," and that "[i]f Ciarletta struck Ayala because he was offended by Ayala's finger pointing, Ciarletta had no objectively justifiable reason for using force and thus was 'not legitimately exercising force in the performance of his duties as an officer.'" (quoting *Williams v. Bramer*, 180 F.3d 699, 704 (5th Cir. 1999) *reh'g denied*, 186 F.3d 633, 634 (5th Cir. 1999)). However, the district court granted summary judgment to Ciarletta on Ayala's wrongful arrest claim, concluding Ayala had not controverted Ciarletta's evidence that Ayala resisted being placed in handcuffs and resisted being placed in the squad car.

Ciarletta later filed a second motion for summary judgment based on qualified immunity, this time arguing that the law was not clearly established that, given the circumstances surrounding Ciarletta's use of force, it was unconstitutional to use a flashlight to "prevent the combativeness of Ayala." The district court concluded there was a genuine issue of material fact that Ciarletta used a flashlight to hit Ayala on the head but agreed with Ciarletta that "[t]here is no clearly established prohibition against a police officer hitting a noncompliant individual with a flashlight." The district court observed there were a number of district court cases where the use of flashlights in such situations had been condoned and distinguished the two cases proffered by Ayala, granting summary judgment to Ciarletta.

Ayala only appeals the grant of summary judgment on his excessive force claim regarding the physical altercation inside the house and the grant of summary judgment on his wrongful arrest claim.

## II. STANDARD OF REVIEW

We review a district court's grant of summary judgment *de novo*, applying the same standard as the district court. *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012). "Summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact.'" *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (quoting Fed. R. Civ. P. 56(c)). "A dispute is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Poole*, 691 F.3d at 627 (citing *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000)). All facts are viewed in the light most favorable to the non-moving party—here, Ayala. *Id.* However, this court assigns "greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene." *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011) (citing *Scott v. Harris,* 550 U.S. 372 (2007)).

## III. DISCUSSION

### A. Excessive Force

#### 1. Legal Standard

"To prevail on an excessive-force claim, [Ayala] must show '(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016) (quoting *Elizondo v. Green*, 671 F.3d 506, 510 (5th Cir. 2012)). "Excessive force claims are necessarily fact-intensive; whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular

case.'" *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

"A qualified immunity defense alters the usual summary judgment burden of proof." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Id.* "In determining qualified immunity, courts engage in a two-[pronged] analysis." *Griggs v. Brewer*, 841 F.3d 308, 312 (5th Cir. 2016). One prong entails "assess[ing] whether a statutory or constitutional right would have been violated on the facts alleged." *Id.* The other prong involves "determin[ing] whether the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 312–13 (internal citation omitted). These prongs can be analyzed in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

In excessive force cases, the latter "prong of the analysis 'is better understood as two separate inquiries: whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in light of that then clearly established law.'" *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005) (quoting *Felton v. Polles,* 315 F.3d 470, 477 (5th Cir. 2002)). "To be clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Callahan*, 623 F.3d at 253 (citing *Brown v. Miller,* 519 F.3d 231, 236 (5th Cir. 2008)). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. "If officers of reasonable

competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact." *Tarver*, 410 F.3d at 750.

2. Analysis

The district court found there was an issue of fact as to whether Ciarletta used a flashlight when exercising force against Ayala and therefore assumed it to be true for purposes of summary judgment. Nevertheless, the district court determined it was "undisputed that Ayala was drunk and was behaving erratically before Deputy Ciarletta arrived on the scene" and that the body camera showed Ayala "was verbally abusive and was physically threatening, if not actually assaulting Deputy Ciarletta." Based on these circumstances, the district court found that there was no clearly established law pronouncing "that a single flashlight blow in connection with a take-down was a clear violation of Ayala's constitutional right."

On appeal, Ayala argues that the district court framed the issue improperly, focusing on cases condoning flashlight use rather than determining whether *any* type of force was justifiable when there was "no crime, no resistance and the use of words alone." Ayala cites multiple cases to show that "as early as February 26, 2013, it was clearly established law that it was unreasonable and excessive for an officer to abruptly escalate an encounter via physical takedown where even passive resistance was at hand."

Ciarletta's first response is that Ayala did not bring before the district court a case establishing that, based on similar facts, "no reasonable officer could have believed Deputy Ciarletta's alleged use of force to be legal under the circumstances . . . ." The district court thoroughly distinguished the two cases Ayala presented in response to Ciarletta's summary judgment motion, *Goffney v. Sauceda*, 340 F. App'x 181 (5th Cir. 2009) and *Randell v. Davis*, 986 F.2d 1419 (5th Cir. 1993), and Ayala does not discuss those cases on appeal. Instead, Ayala cites several new cases for the proposition that "a reasonable

8

jury could conclude that an officer's use of force was excessive where the plaintiff resisted by pulling his arm away from the officer." Ciarletta contends this defeats Ayala's claim on appeal because "[h]e cannot now retroactively cure his failure to meet his burden by claiming the court should have considered authority he never put before it." *See Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018) ("In the district court, Plaintiff . . . cited nary a pre-existing or precedential case. That alone dooms his case here.").

Even if we were to consider the cases raised in Ayala's brief (which Ayala does not discuss in depth), they are distinguishable because they involved issues of material fact and considered passive resistance—pulling an arm away from an arresting officer—which is different from the facts at issue here. *See Trammell v. Fruge*, 868 F.3d 332, 343 (5th Cir. 2017) (plaintiff merely pulled his arm away during arrest and several issues of fact existed); *Ramirez v. Martinez*, 716 F.3d 369, 376–79 (5th Cir. 2013) (same); *Goodson v. City of Corpus Christi*, 202 F.3d 730, 734 (5th Cir. 2000) (same). Here, even assuming Ciarletta struck Ayala with a flashlight, the video supports a conclusion that a reasonable officer could have felt threatened—Ayala was verbally aggressive, physically close to Ciarletta, and, by his own admission, drunk.

Moreover, because Ayala has no memory of the altercation, he has put nothing into the record to controvert Ciarletta's affidavit that Ayala put hands on him and then appeared as though he was going to go at Ciarletta "in a forceful manner." While Ayala refers several times to the fact that he committed no crime and characterizes his behavior as "passive-resistance," he has only offered speculation that he never pushed or touched Ciarletta. The inconsistency between Ciarletta's initial statements (telling Ayala not to point his finger at him) and Ciarletta's later statement (telling Ayala never to touch a cop) are simply not enough to establish an issue of fact that Ayala did not present a threat to Ciarletta. "'Testimony based on conjecture or speculation is

insufficient to raise an issue of fact to defeat a summary judgment motion' because the evidence for the non-moving party must be sufficient for a jury to return a verdict for that party." *Silver Dream, L.L.C. v. 3MC, Inc.*, 519 F. App'x 844, 848 (5th Cir. 2013) (quoting *Ruiz v. Whirlpool, Inc.,* 12 F.3d 510, 513 (5th Cir. 1994)).

Given Ayala's failure to point to clearly established law that is factually relevant, we agree with the district court that Ciarletta is entitled to qualified immunity on this record.

## B. Wrongful Arrest

Ayala contends the district court erred in granting summary judgment to Ciarletta on his wrongful arrest claim because there is at least a fact issue as to whether Ayala actually committed the offense of assault on a police officer and resisting arrest and/or "whether there is *any* probable cause to support Ayala's arrest at all." As an initial matter, the standard is not whether Ayala actually committed an offense; a "warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "Probable cause exists when all of the facts known by a police officer 'are sufficient for a reasonable person to conclude that the suspect had committed, or was in the process of committing, an offense.'" *State v. Kleinert*, 855 F.3d 305, 316 (5th Cir. 2017) (quoting *United States v. Castro*, 166 F.3d 728, 733 (5th Cir. 1999)).

Ciarletta claims there was probable cause to believe that Ayala resisted arrest under Texas law. In Texas, a person commits the offense of resisting arrest "if he intentionally prevents or obstructs a person he knows is a peace officer . . . from effecting an arrest . . . by using force against the peace officer . . . ." Tex. Penal Code Ann. § 38.03(a). "It is no defense to prosecution under this section that the arrest or search was unlawful." *Id.* § 38.03(b). "[T]he act of

resisting can supply probable cause for the arrest itself." *Ramirez*, 716 F.3d at 376 (citing *Padilla v. Mason* 169 S.W.3d 493, 504 (Tex. App.—El Paso 2005, pet. denied)). Texas' expansive resisting arrest laws encompass such resistance as pulling an arm away. *See Ramirez*, 716 F.3d at 376 (collecting Texas cases affirming that the mere act of pulling away from an officer can constitute resisting arrest under § 38.03(a)).[4] Even taking the facts in the light most favorable to Ayala, there was probable cause to believe Ayala resisted arrest based on the uncontroverted statements from Ciarletta and Campbell that it took both deputies to handcuff Ayala.

To the extent Ayala argues his arrest was because of his speech directed at Ciarletta, "if an officer has probable cause to seize that individual, 'the objectives of law enforcement take primacy over the citizen's right to avoid retaliation.'" *Davidson v. City of Stafford, Texas*, 848 F.3d 384, 391 (5th Cir. 2017), *as revised* (Mar. 31, 2017) (quoting *Allen v. Cisneros*, 815 F.3d 23, 245 (5th Cir. 2016)).[5] Because there was objective probable cause that Ayala resisted arrest, the district court properly granted summary judgment to Ciarletta on Ayala's wrongful arrest claim.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[4] While in some instances Texas law allows for the use of force in resisting arrest, Ayala does not contend that such laws apply in this instance. *See* Tex. Penal Code Ann. § 9.31(c) ("The use of force to resist an arrest or search is justified: (1) if, before the actor offers any resistance, the peace officer . . . uses or attempts to use greater force than necessary to make the arrest or search; and (2) when and to the degree the actor reasonably believes the force is immediately necessary to protect himself against the peace officer's . . . use or attempted use of greater force than necessary.").

[5] The Supreme Court recently announced an exception to the general notion that probable cause ordinarily defeats a retaliatory arrest claim: "when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1727 (2019). Ayala has not argued that this case falls within the exception, nor is there anything in the record to suggest such a conclusion.