# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
February 8, 2021

Lyle W. Cayce
Clerk

No. 20-10055

SELINA MARIE RAMIREZ, *individually and as independent administrator of, and on behalf of,* THE ESTATE OF GABRIEL EDUARDO OLIVAS *and the heirs-at-law of* GABRIEL EDUARDO OLIVAS, *and as parent, guardian, and next friend of and for female minor* SMO; GABRIEL ANTHONY OLIVAS, *individually,*

*Plaintiffs—Appellees,*

*versus*

JEREMIAS GUADARRAMA; EBONY N. JEFFERSON,

*Defendants—Appellants.*

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:20-CV-7

Before JOLLY, STEWART, and OLDHAM, *Circuit Judges.*

PER CURIAM:*

This case arises out of the tragic death of Gabriel Eduardo Olivas. While responding to a 911 call reporting that Olivas was threatening to kill

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

himself and burn down his family's house, Officers Guadarrama and Jefferson discharged their tasers at Olivas, striking him in the chest. Olivas had doused himself in gasoline, which ignited when the prongs of Guadarrama's taser came into contact with it. Olivas was engulfed in flames. The house burned down. Olivas died of his injuries several days later.

Olivas's widow and two children subsequently brought suit, alleging that Officers Guadarrama and Jefferson had violated Olivas's Fourth Amendment rights when they tased him. Guadarrama and Jefferson asserted the defense of qualified immunity and moved for dismissal. The district court denied their motion, stating that more factual development was needed. Guadarrama and Jefferson then filed this interlocutory appeal. We reverse the denial of qualified immunity and remand to the district court with instructions to dismiss the claims against Guadarrama and Jefferson. With this background setting, we now proceed to explain more fully.

I

A.

On July 10, 2017, Gabriel Anthony Olivas called 911 and reported that his father was threatening to kill himself and burn down their house. Corporal Ray, Sergeant Jefferson, and Officers Scott, Elliott, and Guadarrama of the Arlington Police Department responded. Officer Guadarrama was first on the scene, and he began preparations while awaiting backup. Sergeant Jefferson and Officer Elliott were next to arrive, and the three of them proceeded to enter the house.

Upon entering, Officer Guadarrama detected the odor of gasoline. A woman directed the officers to a corner bedroom on the east side of the house. There they found Gabriel Eduardo Olivas ("Olivas") leaning against a wall and holding a red gas can. After turning his flashlight on Olivas, Officer Elliott allegedly shouted to Sergeant Jefferson and Officer Guadarrama, "If

we tase him, he is going to light on fire." Elliott then discharged OC spray in Olivas's face, temporarily blinding him. It was at about this point—whether before or after being sprayed is not entirely clear from the record—that Olivas doused himself in gasoline. Guadarrama and Elliott, at least, and maybe Jefferson as well, noticed that Olivas was holding some object that appeared as though it might be a lighter. Guadarrama, followed in short succession by Jefferson, fired his taser at the gasoline-soaked man, causing him to burst into flames.

Corporal Ray and Officer Scott arrived at the scene at about this time. When they entered the house, they found Olivas engulfed in flames. The fire spread from Olivas to the walls of the bedroom, and the house eventually burned to the ground. The officers at the scene were able to evacuate the family members who had remained in the house, but Olivas was badly burned and later died from his injuries.

## B.

Olivas's wife and son ("Plaintiffs") subsequently brought suit, under 42 U.S.C. § 1983, against Sergeant Jefferson, Officer Guadarrama, and the City of Arlington, Texas, alleging that the defendant officers violated Olivas's Fourth Amendment rights when they tased him. Guadarrama and Jefferson each raised qualified immunity as a defense and moved for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). The district court denied their motions, finding that more factual development was needed.

Guadarrama and Jefferson filed a joint notice of appeal and then a motion for reconsideration. Because filing of the notice of appeal deprived the district court of jurisdiction, it denied the defendant officers' motion for reconsideration. Guadarrama and Jefferson then moved this court for a limited remand, which we granted, so that the district court could rule on their motion for reconsideration. The district court then denied their motion on the merits. Guadarrama and Jefferson then filed this appeal.

No. 20-10055

## II

This court reviews *de novo* a denial of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff[s]." *Id.* (internal quotation marks and citations omitted).

This court reviews appeals of qualified immunity *de novo*. *Cantrell v. City of Murphy*, 666 F.3d 911, 918 (5th Cir. 2012) (citation omitted). "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (per curiam). We now proceed to the analysis.

## III

### A.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). Because qualified immunity is an *immunity from suit*, not merely a defense to liability, "it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). It is for this reason that a denial of qualified immunity is immediately appealable and that a defendant's entitlement to qualified immunity should be determined at the earliest possible stage of the litigation. *Id.* at 526–27; *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). This scheme prevents a defendant

No. 20-10055

entitled to immunity from being compelled to bear the costs of discovery and other pre-trial burdens.

The qualified immunity analysis has two components: (1) whether a plaintiff alleges or shows[1] the violation of a federal constitutional or statutory right; and (2) whether the right in question was clearly established at the time of the alleged violation. *Pearson*, 555 U.S. at 232. Since *Pearson*, a reviewing court may tackle these questions in whatever order it deems most expeditious. *Id.* at 236. The second question, addressing whether a right was "clearly established," encompasses another question, discussed separately in some of this court's opinions, about the objective reasonableness of a defendant official's conduct. *See Kinney v. Weaver*, 367 F.3d 337, 349–50 (5th Cir. 2014). In order for a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The reasonableness of the official's conduct and the degree to which the particular right in question was clearly established are thus merged into one issue for purposes of the qualified immunity analysis.

B.

We now turn to the first prong of the qualified immunity analysis. Plaintiffs allege that Guadarrama and Jefferson violated Olivas's Fourth Amendment rights by use of excessive force when they fired their tasers at him. The question is thus whether Olivas had a constitutional right not to be tased, not as a general proposition but under the particular circumstances

---

[1] The relevant standards differ depending on whether the issue is raised in a motion to dismiss or a motion for summary judgment.

No. 20-10055

present in this case.  Plaintiffs have the burden of showing that such a right existed and that this was clearly established at the time of the incident.

The Fourth Amendment protects individuals from being subjected to excessive force when they are physically apprehended or subdued by agents of the government.  *Graham v. Connor*, 490 U.S. 386, 393–94 (1989).  The question of what is "excessive" is thus intertwined with the issue of reasonableness that is embedded within the Fourth Amendment.  "To establish the use of excessive force in violation of the Constitution, a plaintiff must prove: (1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable."  *Elizondo v. Green*, 671 F.3d 506, 510 (5th Cir. 2012) (internal quotation marks and citation omitted).  We now turn to address those elements as they apply in this case.

IV

A.

Here Plaintiffs can easily show injury:  Olivas died, and their house was destroyed.  Next we must ask whether Guadarrama or Jefferson employed excessive force.

We view the disputed facts in the light most favorable to Plaintiffs: Guadarrama, Jefferson, and Elliott arrived at the house in response to a 911 call,  having been told that Olivas was threatening to kill himself and burn down the house.[2]  They found Olivas in a bedroom that smelled of gasoline. Olivas was holding a gas can.  Officer Elliott shouted, "If we tase him, he is

---

[2] The First Amended Complaint indicates that Corporal Ray was aware of an allegation that Olivas was under the influence of methamphetamine.  Nothing in the complaint, however, indicates that any of the other officers were aware of this allegation.

No. 20-10055

going to light on fire." Elliott then discharged OC spray at Olivas, temporarily blinding him. Olivas began to shout nonsense and yell that he was going to burn the place to the ground. He poured gasoline over himself. At some point before either taser was discharged, Officers Guadarrama and Elliott noticed an object in Olivas's hand that appeared to them to be a lighter. Guadarrama fired his taser, striking Olivas in the chest. Olivas burst into flames. Jefferson then fired his taser, which also struck Olivas in the chest.

Having set forth this factual background, we now consider the reasonableness of the force that was employed. *Graham* sets forth certain specific factors to be considered in the Fourth Amendment reasonableness inquiry: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Here, the severity of the threatened crime, i.e., felony arson, was considerable. *See* Tex. Penal Code § 28.02. Olivas posed a substantial and immediate risk of death or serious bodily injury to himself and everyone in the house. He was covered in gasoline. He had been threatening to kill himself and burn down the house. He appeared to be holding a lighter. At that point, there were at least six other people in the house, all of whom were in danger. The final *Graham* factor in the reasonableness inquiry is whether Olivas was attempting to flee or evade arrest, which is of minimal relevance here.

## B.

Arguing that the officers' conduct was unreasonable, Plaintiffs cite a number of cases, most of which are unpublished or not from this circuit. Although true that use of a taser in unwarranted circumstances can be unconstitutional, the facts of this case do not resemble those of *Samples v. Vadzemnieks*, 900 F.3d 655 (5th Cir. 2018), or *Newman v. Guedry*, 703 F.3d 757 (5th Cir. 2012), the only published Fifth Circuit cases cited by Plaintiffs. *Samples*

involved the tasing of an apparently intoxicated man who supposedly had "growled at" a police officer and adopted a "fighting stance." *Samples*, 900 F.3d 655 at 658. *Newman* involved an arrestee who was tased after getting into an altercation with the arresting officer while he was being patted down. *Newman*, 703 F.3d at 760. Given the degree of granularity involved in the qualified immunity analysis,[3] we see no reason to engage in a detailed discussion of these cases. The only commonality they share with the instant case is that police officers in these cases also used tasers. Certainly, neither involved a suicidal individual, flammable material, a credible threat of arson, or the potential immolation of others.

Plaintiffs also cite extensively to the unpublished case of *Peña v. City of Rio Grande*, 816 F. App'x 966 (5th Cir. 2020) (per curiam). In *Peña*, this court reversed a grant of qualified immunity. Police officers had tased a juvenile who was running away from them, saying that they believed she might run into oncoming traffic. *Id.* at 968. As an unpublished case, *Peña* is persuasive authority only, and we find it unpersuasive because it bears minimal resemblance to the instant case. For example, Peña had, at most, committed a minor misdemeanor infraction. She had not threatened harm to herself or anyone else. There was no particular reason to think she would run into the street. *See id.* at 973–74. By contrast, Olivas was credibly threatening to kill

---

[3] *See Morrow v. Meachum*, 917 F.3d 870, 875 (5th Cir. 2019) ("[T]he dispositive question is whether the violative nature of *particular* conduct is clearly established. That is because qualified immunity is inappropriate only where the officer had fair notice—in light of the specific context of the case, not as a broad general proposition—that his *particular* conduct was unlawful." (internal quotation marks and citations omitted)).

himself and feloniously burn down a house containing at least six other people.

## C.

We now turn to the officers' arguments that their conduct did not violate any right of Olivas's, or at least that they violated no right whose existence was clearly established at the time of the incident. Guadarrama cites a number of cases in which police officers employed deadly force in at least somewhat comparable circumstances and in which this court found no constitutional violation. Examples include *Rice v. Reliastar Life Ins. Co.*, 770 F.3d 1122, 1134 (5th Cir. 2014) (finding no constitutional violation where officer shot allegedly suicidal individual, who had been ordered multiple times to drop the gun he was carrying, while he was walking to his kitchen); *Harris v. Serpas*, 745 F.3d 767, 770, 772–73 (5th Cir. 2014) (finding no constitutional violation where officers, responding to an ex-wife's 911 call stating that she feared her ex-husband may have taken an overdose of sleeping pills, breached the barricaded door to the ex-husband's bedroom and shot him when he raised a knife over his head and advanced toward them); and *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011) (finding no constitutional violation where officers breached allegedly suicidal individual's bedroom door and shot him after he attacked them with knives).

These cited cases recognize the principle that "[t]he use of deadly force is constitutional when the suspect poses a threat of serious physical harm to the officer or others." *Elizondo*, 671 F.3d at 510. Plaintiffs refer us to case law purportedly establishing that deadly force may not be employed against individuals threatening only themselves. This discussion, however, is not apropos. Olivas may only have been threatening to harm himself, but

he was threatening to do so in a way that put everyone in the house (and possibly others) in danger.

V

Although the employment of tasers led to a tragic outcome, we cannot suggest exactly what alternative course the defendant officers should have followed that would have led to an outcome free of potential tragedy. We emphasize that the reasonableness of a government official's use of force must be judged from the perspective of a reasonable official on the scene, not with the benefit of 20/20 hindsight. *See Graham*, 490 U.S. at 396. The fact that Olivas appeared to have the capability of setting himself on fire in an instant and, indeed, was threatening to do so, meant that the officers had no apparent options to avoid calamity. If, reviewing the facts in hindsight, it is still not apparent what might have been done differently to achieve a better outcome under these circumstances, then, certainly, we, who are separated from the moment by more than three years, cannot conclude that Guadarrama or Jefferson, in the exigencies of the moment, acted unreasonably.

While the preceding discussion applies to both officers, we now must distinguish between the actions of Guadarrama and those of Jefferson.[4]

---

[4] The issue of whether the district court erred by treating both officers' actions collectively rather than individualizing its analysis was briefed by Sergeant Jefferson. Our precedent makes clear that "we examine each individual's entitlement to qualified immunity separately." *Carroll v. Ellington*, 800 F.3d 154, 174 (5th Cir. 2015) (internal quotation marks omitted) (citing *Meadours v. Ermel*, 483 F.3d 417, 422 (5th Cir. 2007) (holding that it was error for the district court to consider the actions of multiple police officers together)); *see also Hernandez v. Tex. Dep't of Protective and Regulatory Servs.*, 380 F.3d 872, 883–84 (5th Cir. 2004) (engaging in an individualized analysis of multiple public officials); *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005) (same); *Tarver v. City of Edna*, 410 F.3d 745, 752–54 (5th Cir. 2005) (same). We agree with Jefferson that the district court failed to engage in an individualized analysis, and that its collective

Given that Guadarrama fired first, the most readily apparent justification for his use of his taser was to prevent Olivas from lighting himself on fire.[5] Jefferson fired second, and while at one point he claimed to have fired instinctively, Plaintiffs allege that he did so intentionally. Accepting Plaintiffs' allegation as true, Jefferson still had good reason to try to immobilize Olivas, namely, to prevent him from spreading fire around the house. Moreover, at that point there was no risk that using a taser might ignite a fire since Olivas was already engulfed in flames.

Accepting the pleaded facts as true and construing them in the light most favorable to Plaintiffs, neither officer's conduct was unreasonable, nor was the force they employed clearly excessive. We thus find that Plaintiffs' factual allegations do not make out a violation of Olivas's Fourth Amendment rights.

The plaintiffs have asserted that Officers Guadarrama and Jefferson violated the Fourth Amendment rights of their deceased husband and father by using excessive and unreasonable force, causing his death. The officers have invoked qualified immunity from the lawsuit, arguing that there was no constitutional violation because their use of force was reasonable under the circumstances. We have found that, given the horrendous scene that the officers were facing, involving the immediate potential for the destruction of lives and property, the force used—firing tasers—was not unreasonable or

---

treatment of the defendant officers' actions was error. This point is, however, inconsequential, as we find that both officers are entitled to qualified immunity.

[5] It is appropriate for this court to evaluate the actions in question by reference to an objective standard of reasonableness. We need not try to determine what Guadarrama or Jefferson was actually thinking at the time. *See Mason v. Lafayette City-Parrish Consol. Gov't*, 806 F.3d 268, 275 (5th Cir. 2015) (quoting *Graham*, 490 U.S. at 397).

excessive, and consequently we hold that the officers did not violate the Fourth Amendment and are thus entitled to qualified immunity.

For the reasons given, we REVERSE the order of the district court denying qualified immunity to Officer Guadarrama and Sergeant Jefferson and REMAND this case for entry of an order dismissing all claims against Guadarrama and Jefferson.