# United States Court of Appeals
# For the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
September 13, 2023

Lyle W. Cayce
Clerk

_____

No. 22-60231

_____

Thomas Walton, Individually and on Behalf of the
Wrongful Death Beneficiaries of Annie Walton,
Deceased; Aliven Walton,

*Plaintiffs—Appellees/Cross-Appellants*,

*versus*

City of Verona,

*Defendant—Appellant/Cross-Appellee*,

J.B. Long; John Does 1–25,

*Defendants—Cross-Appellees*.

_____

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 1:20-CV-40

_____

Before Duncan and Wilson, *Circuit Judges*, and Mazzant, *District Judge*.[*]

Amos L. Mazzant, *District Judge*:

---

[*] United States District Judge for the Eastern District of Texas, sitting by designation.

No. 22-60231

In 2018, the Verona Police Department twice arrested Latavious Betts for his connection to violent shootings. Both times, however, he was released while his charges were pending. Just five months after his second arrest, Latavious Betts drove to Annie Walton's house and opened fire—killing Annie Walton and injuring her grandson, Aliven Walton.

Annie Walton's wrongful death beneficiaries and Aliven Walton (collectively, the Waltons) believe the City of Verona and the Verona Chief of Police, J.B. Long, are responsible for the shooting at Annie Walton's home, so they sued under 42 U.S.C. § 1983 and the Mississippi Tort Claims Act. At summary judgment, the district court initially dismissed all claims. But the Waltons filed a motion for reconsideration, and the district court reversed course—finding the City of Verona was not entitled to sovereign immunity under the Mississippi Tort Claims Act. The Waltons and the City of Verona subsequently filed interlocutory appeals. For the following reasons, we dismiss the Waltons' appeal for lack of jurisdiction, and reverse the district court's finding against the City regarding sovereign immunity.

**I.**

This case finds its genesis in three shootings that occurred only a few months apart from one another. In each case, Latavious Betts (Betts) was a primary suspect.

On March 22, 2018, three men fired gunshots at a carwash in Verona, Mississippi, and Jaskin Green was killed during the exchange. Verona Police Chief J.B. Long (Long) investigated the incident and interviewed several witnesses connected to the murder. Based on the information he received, Long believed Betts was involved in the shooting, and he convinced Justice Court Judge Hopkins to issue a warrant for Betts's arrest. Betts was taken into custody and placed on an investigatory hold. While in custody, Betts

No. 22-60231

informed Long that he did not know anything about the murder, and he was not present at the carwash when the shooting occurred.

Before Betts was due for his initial appearance, Long called Judge Hopkins, who was away for a judicial conference. During their conversation, Long mentioned that he had a murder suspect who needed a bond amount—never referring to Betts by name. Judge Hopkins recommended a $50,000 bond amount, and Long said he would bring the appropriate paperwork to Judge Hopkins later. After that conversation, Long released Betts on his own recognizance with the intention of presenting the case to the grand jury.

When Judge Hopkins returned from the judicial conference, Long presented bond paperwork for Betts, but Judge Hopkins refused to sign it because he thought Long was referring to a hypothetical criminal defendant during their earlier call—not Betts. Judge Hopkins and Long met with Justice Court Judge Holland, and she determined that the best course of action was to wait for Betts's case to be presented to the grand jury.

Shortly after his release, Betts resurfaced. On July 8, 2018, Long responded to a shooting at a Chevron gas station where two victims had been hit. Long reviewed the store's video surveillance footage, and he immediately identified Betts as one of the shooters. Betts was then arrested for aggravated assault. For his initial appearance, Betts was brought before Judge Holland. Long notified Judge Holland that Betts was out on bail for a prior charge, but Long did not specify that the charge was for first-degree murder. The parties agree that Betts received a $50,000 bond relating to the July shooting.[1]

Eventually, grand juries indicted Betts for the March and July shootings, and capiases were issued to the Lee County Sheriff's Department

---

[1] This fact is not evidenced in the record: Betts's initial appearance form does not indicate any bond amount and the form seems to be missing several provisions.

to arrest him. Yet, an arrest did not come quick enough: Betts committed another crime before the Lee County Sheriff's Department could seize him.

Betts and Aliven Walton (Aliven) generally knew each other and lived in the same neighborhood. On November 9, 2018, Betts and Aliven arranged a meeting where Betts gave Aliven an ounce of marijuana. Later, a disagreement arose about the transaction—as Aliven believed the drugs were free but Betts expected some type of payment. On December 7, 2018, Betts called Aliven and told him he was coming to Annie Walton's house, where Aliven lived, and planned to "shoot it up." Annie Walton (Annie) called the police, and a sheriff's deputy responded. The deputy spoke with Annie, wrote up some paperwork, and then left the home. Five minutes after the deputy departed, Betts arrived and fired several gunshots into the house. Annie, Aliven, and Aliven's mother were all shot and subsequently rushed to the hospital. And, tragically, Annie died shortly thereafter.

Betts pleaded guilty to second-degree murder and aggravated assault for the shooting at Annie's home. He was not convicted for the other 2018 incidents.

On March 10, 2020, the Waltons filed the current case against the City of Verona (the City) and Long. The Waltons alleged claims for abuse of executive power and state-created danger under 42 U.S.C. § 1983, as well as additional claims under the Mississippi Tort Claims Act (MTCA). During the proceedings in the district court, the City and Long filed motions for summary judgment, which the district court granted. As for the federal claims, the district court found that the state-created-danger claim should not go forward because the Fifth Circuit has never recognized such a claim. Furthermore, the district court dismissed the claim for abuse of executive power because Long's actions did not "shock the conscience" in a manner to establish liability. Meanwhile, the MTCA claims were dismissed because

there was no evidence that Long acted with reckless disregard. So, the City was entitled to sovereign immunity.

Following the summary judgment ruling, the Waltons filed a motion for reconsideration under Federal Rule of Civil Procedure 59 and argued that the district court misapplied the standard for summary judgment in resolving factual disputes and inferences against them. The district court granted in part and denied in part the Waltons' motion. While the court declined to revise its ruling on the Waltons' federal claims, it found that the City was not entitled to sovereign immunity on the MTCA claims. Specifically, the district court concluded there was a genuine dispute of material fact as to whether the Waltons had established causation because there was support for the notion that Long acted with reckless disregard in withholding information from Judge Holland.

The City appealed the district court's order on the motion to reconsider. The Waltons cross-appealed the district court's dismissal of their federal claims.

## II.

Before reaching the merits of the parties' interlocutory appeals, we turn, as we must, to the issue of jurisdiction. *Harris v. Clay Cnty., Miss.*, 47 F.4th 271, 275 (5th Cir. 2022). The Waltons maintain we lack jurisdiction over the City's appeal. The City and Long counter with the same argument against the Waltons' cross appeal. While the City and Long's point is well-taken, the Waltons' is not.

We generally only have jurisdiction over *final* decisions of a district court. 28 U.S.C. § 1291; *Tracy v. Lumpkin*, 43 F.4th 473, 475 (5th Cir. 2022). A district court order "is final and appealable when it ends the litigation and leaves nothing for the court to do but execute the judgment." *Elizondo v.*

*Green*, 671 F.3d 506, 509 (5th Cir. 2012) (citations omitted). As such, an order that dismisses claims against some defendants, but not others, "is not a final appealable judgment" unless the district court certifies the order for appeal in accordance with Federal Rule of Civil Procedure 54(b). *Id.*

That said, pursuant to the collateral-order doctrine, our jurisdiction extends to "a narrow class of decisions that do not terminate the litigation, but are sufficiently important and collateral to the merits that they should nonetheless be treated as final." *Tracy*, 43 F.4th at 475 (cleaned up) (quoting *Will v. Hallock*, 546 U.S. 345, 347 (2006)). To that end, we typically have jurisdiction over denials of sovereign and qualified immunity because these immunities are "an *immunity from suit* rather than a mere defense to liability," and those immunities are "effectively lost if a case is erroneously permitted to go to trial." *Harris*, 47 F.4th at 275 (emphasis in original) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)); *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993) (relying on *Mitchell* and concluding that denials of Eleventh Amendment sovereign immunity are appealable under the collateral-order doctrine). Likewise, we have held that we may review denials of immunity under Mississippi law because the immunity is a protection from suit. *Lampton v. Diaz*, 661 F.3d 897, 899 (5th Cir. 2011) (per curiam); *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 438–39 (5th Cir. 2015). We reach the same result here.

Fighting this conclusion, the Waltons posit that we lack jurisdiction to consider the City's appeal because the district court's immunity ruling hinged on a genuine dispute of material fact. But the Waltons misunderstand our role on interlocutory review. True, in the immunity context, we do not have authority to review the district court's "factual determination that a genuine factual dispute exists." *Ducksworth v. Landrum*, 62 F.4th 209, 212 (5th Cir. 2023) (citations omitted). However, we can review "whether those factual disputes, viewed in the light most favorable to the plaintiff, are

No. 22-60231

'*material* to the application'" of immunity. *Harris*, 47 F.4th at 275 (emphasis in original) (quoting *Samples v. Vadzemnieks*, 900 F.3d 655, 660 (5th Cir. 2018)). With the City's appeal, we do just that—only considering whether the City is entitled to sovereign immunity despite the factual disputes in the record.

Although we conclude that we have jurisdiction over the City's appeal, we cannot say the same for the Waltons' cross-appeal. For us to have interlocutory jurisdiction, the district court's decision must qualify as a collateral order as to each party. *See id.* (citing *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 42 (1995)). The district court held that Long was entitled to qualified immunity relating to the Waltons' federal claims because the Waltons could not show the violation of a constitutional right. Therefore, the Waltons also could not sustain their federal claims against the City.

And while we may review the *denial* of claims of qualified immunity under the collateral-order doctrine, the doctrine does not encompass orders *granting* qualified immunity. *Elizondo*, 671 F.3d at 509 (noting that denials of qualified immunity are immediately appealable but "the same does not hold for an order *granting* qualified immunity"). Orders granting qualified immunity "can be fully and fairly reviewed after a final judgment." *Id.* at 509–10 (citations omitted). Accordingly, they are not subject to interlocutory review. *Id.*

Here, the Waltons assert that the collateral-order doctrine should apply.[2] For the doctrine to apply, a final order must (1) conclusively

---

[2] The Waltons do not reference the doctrine by name; instead, they rely on *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949), for the proposition that their federal claims are part of a "small class of cases where claims of right are separable from other rights, which are too important to be denied review." But *Cohen* merely pronounced the collateral-order doctrine for the first time. *See La. Real Est. Appraisers Bd. v. Fed. Trade Comm'n*, 917 F.3d 389, 391–92 (5th Cir. 2019). Consequently, we consider whether the federal claims here are subject to the collateral-order doctrine.

No. 22-60231

determine the disputed question, (2) resolve an issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment. *Tracy*, 43 F.4th at 475 (citations omitted). But the Waltons fail to provide any reason for why the district court's dismissal of their claims cannot be effectively reviewed later, and the district court's dismissal of the federal claims did not resolve a pertinent issue separable from the merits of the Waltons' case.

Therefore, we do not have jurisdiction to consider the Waltons' appeal and conclude that it should be dismissed. Having cleared the jurisdictional hurdle, we shift to the merits of the City's appeal.

**III.**

Our court typically reviews a decision to grant or deny a motion to reconsider under Rule 59(e) for an abuse of discretion. *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 721–22 (5th Cir. 2013) (citing *Pioneer Nat. Res. USA, Inc. v. Paper, Allied Indus., Chem. & Energy Workers Intern. Union Loc. 4-487*, 328 F.3d 818, 820 (5th Cir. 2003)). "To the extent that a ruling was a reconsideration of a question of law, however, the standard of review is *de novo*." *Id.* at 722 (quoting *Pioneer Nat. Res. USA*, 328 F.3d at 820).

**IV.**

On appeal, the City contends that the district court erred in refusing to grant sovereign immunity relating to the Waltons' MTCA claims. We agree.

At the outset, it is pivotal to understand the exact claims that the Waltons bring against the City—which is not abundantly clear from their complaint. Under Count III of the Waltons' complaint entitled, "Claims Made Under the Mississippi Tort Claims Act," the Waltons generally alleged that the MTCA waives the state's immunity for claims "arising out

No. 22-60231

of the torts of such governmental entities and the torts of their employees[.]" But the Waltons never explained the tort that the City or Long committed. Instead, they generally alleged that the City and Long "owed a duty of care to the Waltons," and that Long's actions "violated well-established law" and "were taken in reckless disregard" for the Waltons' safety. These general assertions do not indicate a precise tort. To the contrary, it appears the Waltons crafted their complaint based on a flawed understanding of the MTCA.

The MTCA "provides the exclusive civil remedy against a governmental entity or its employees for acts or omissions which give rise to a suit." *Horton ex rel. Est. of Erves v. City of Vicksburg*, 268 So. 3d 504, 508 (Miss. 2018) (quoting *Stewart ex rel. Womack v. City of Jackson*, 804 So. 2d 1041, 1046 (Miss. 2002)). And as a general matter, the MTCA cloaks the state and its political subdivisions with sovereign immunity. *Williams v. City of Batesville*, 313 So. 3d 479, 482 (Miss. 2021) (citing MISS. CODE ANN. § 11-46-3). "But the [Mississippi] Legislature waived sovereign immunity for 'claims for money damages arising out of the torts of such governmental entities and the torts of their employees while acting within the course and scope of their employment.'" *Id.* (quoting MISS. CODE ANN. § 11-46-5(1)). So, the general rule is that political subdivisions like the City are not immune from tort claims. *Wilcher v. Lincoln Cnty. Bd. of Supervisors*, 243 So. 3d 177, 181 (Miss. 2018).

There are, however, exceptions to that waiver of immunity; specifically, under MTCA section 11-46-9(1), the Legislature reinstated sovereign immunity for certain types of claims. *Id.* (citing MISS. CODE ANN. § 11-46-9(1)); *Williams*, 313 So. 3d at 482. Relevant here, section 11-46-9(1)(c) of the MTCA shields a governmental entity from liability for any claim arising out of an employee's actions while "engaged in the performance or execution of duties or activities relating to police or fire

protection unless the employee acted in *reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury*." MISS. CODE ANN. § 11-46-9(1)(c) (emphasis added).

Section 11-46-9(1) "restores sovereign immunity." *Wilcher*, 243 So. 3d at 184 (citing *Simpson Cnty. v. McElroy*, 82 So. 3d 621, 624 (Miss. Ct. App. 2011)). "It does not in itself create duties." *Id.* (quoting *Simpson Cnty.*, 82 So. 3d at 624). Nor does the MTCA "grant a right to recover based on a mere violation of statute or regulation." *Id.* (citing *Taylor v. Delta Reg'l Med. Ctr.*, 186 So. 3d 384, 390–91 (Miss. Ct. App. 2016)). Thus, before determining whether a party is entitled to immunity under section 11-46-9(1), there is a critical first step: identifying a valid tort that gives rise to a claim under the MTCA. *See Strickland ex rel. Strickland v. Rankin Cnty. Sch. Dist.*, 341 So. 3d 941, 945 (Miss. 2022) (deciding claim to immunity under a provision found in § 11-46-9(1) and noting that the immunity decision "comes *after* an important pre-test step—namely identifying 'the allegedly tortious act giving rise to the claim.'" (emphasis in original) (quoting *Wilcher*, 243 So. 3d at 187)).

Considering the Waltons' ambiguous complaint, they arguably missed that critical first step by generally alleging that Long acted with "reckless disregard," merely referencing section 11-46-9(1)(c) and not identifying a specific tort. The City urges us to dismiss the Waltons' claims on this basis alone—a point they argued in the district court. *See id.* (holding plaintiff's MTCA claim should be dismissed because the plaintiff "failed to allege a tort claim—let alone produce any evidence in support of his claim"). In response, the Waltons argue that they have always alleged claims for negligence and negligence per se and simply used the MTCA's parameters as a backdrop. They support that assertion by noting that they pleaded that "Long and Verona owed a duty of care," which is an element for a negligence claim.

We do not need to address this issue. Even assuming the Waltons properly alleged their claims, the undisputed evidence demonstrates that they cannot sustain a negligence action here. The elements for a negligence claim are (1) duty, (2) breach of duty, (3) causation, and (4) damages. *Chaffee ex rel. Latham v. Jackson Pub. Sch. Dist.*, 270 So. 3d 905, 907 (Miss. 2019) (citing *Todd v. First Baptist Church of W. Point*, 993 So. 2d 827, 829 (Miss. 2008)). To recover against a defendant, a plaintiff must first establish the existence of some duty. *Id.* (citing *Todd*, 993 So. 2d at 829). But the Waltons cannot do so.

"The existence of a duty is a question of law." *Pritchard v. Von Houten*, 960 So. 2d 568, 579 (Miss. Ct. App. 2007) (citing *Rein v. Benchmark Const. Co.*, 865 So. 2d 1134, 1143 (Miss. 2004)). Under Mississippi law, "[t]he duty to control the conduct of others is a narrow one." *Holland v. Murphy Oil USA, Inc.*, 290 So. 3d 1253, 1256 (Miss. 2020) (citation omitted). Indeed, the duty usually does not exist unless there is a "special relationship between the actor and the third party that imposes a duty for the actor to control the third party or . . . a special relationship between the actor and the injured party that gives the injured party a right to protection." *Id.* (citations omitted). Furthermore, Mississippi follows the public-duty doctrine, which generally provides that "the statutorily[] imposed duties of a sheriff in Mississippi are duties owed to the public as a whole and are, therefore, not actionable by a specific plaintiff, absent a compelling showing of extraordinary circumstances." *Gant v. Maness*, 786 So. 2d 401, 405 (Miss. 2001) (citing *Robinson v. Est. of Williams*, 721 F. Supp. 806, 808 (S.D. Miss. 1989)); *see also Dependants of Reid v. City of Canton*, 858 So. 2d 163, 167 (Miss. Ct. App. 2003) (applying *Gant*'s duty test to a city's mayor, aldermen, and police chief). Stated simply, to satisfy the public-duty doctrine, a plaintiff must show that a sheriff, or in this case, a police chief, "owed him or her a more direct duty distinct from the duties . . . owe[d] to the public as a whole."

No. 22-60231

*Floyd v. Tunica Cnty.*, 333 So. 3d 864, 872 n.4 (Miss. Ct. App. 2022) (citing *Gant*, 786 So. 2d at 405–06).

Returning to the case at hand, we conclude that Long had no special duty to protect the Waltons besides his general duty to keep the public safe as the City's Chief of Police. The Waltons contend Long had a duty to them because Long had a "unique knowledge" of Betts's involvement with the Waltons. But that notion is belied by the record. The only evidence that demonstrates Long had knowledge of *any* connection between Betts and the Waltons comes from Long's investigative file, where there is a copy of a trespassing complaint that Annie filed against Betts in 2016. Not only does that complaint come from two years before the shooting at the Waltons' house, but it also was filed with the Lee County Sheriff's Department—not the Verona Police Department. Long would have had no duty to investigate that complaint. In any event, this sole piece of evidence does not come close to establishing that Long had a special relationship to the Waltons or that Long himself had a duty to control Betts's actions. *See Gant*, 786 So. 2d at 405; *Holland,* 290 So. 3d at 1256. Thus, Long did not owe a duty to the Waltons here. *See Gant*, 786 So. 2d at 405.

Moreover, we find the Waltons' arguments to hold otherwise unpersuasive. For instance, the Waltons argue that the public-duty doctrine cannot be squared with the MTCA's immunity provision at section 11-46-9(1)(c). To be sure, the Mississippi Supreme Court has not specifically addressed "whether the MTCA and its 'reckless disregard' standard supersedes or subsumes the 'public duty doctrine' as a limitation on liability."[3] *Floyd*, 333 So. 3d at 872 n.4 (citing *Dean v. Walker*, 743 F. Supp.

---

[3] We note that *Gant* did not necessarily have the opportunity to opine on this issue since the MTCA was enacted after the events in the case occurred. 786 So. 2d at 407 n.1 ("The facts of this case . . . occurred in April[] 1991, prior to the Legislature's adoption of the Mississippi Tort Claims Act[.]").

2d 605, 607 (S.D. Miss. 2010)). But we are unconvinced that it affects the doctrine for two reasons. First, as mentioned, section 11-46-9(1) does not create duties. *Wilcher*, 243 So. 3d at 184. Thus, it would be passing strange to think that 11-46-9(1)(c) somehow modifies the duty that police officers otherwise have. Second, Mississippi law usually does not impose liability on actors to control the conduct of another person absent a special relationship. *See Holland*, 290 So. 3d at 1256. If the Waltons' view were correct, section 11-46-9(1)(c) would radically change that ordinary rule, which would be an odd result in light of the fact that section 11-46-9(1) does not impose any duties. *See Wilcher*, 243 So. 3d at 177 ("[T]he MTCA does not grant a right to recover based on a mere violation of statute or regulation." (citing *Taylor*, 186 So. 3d at 390–91)). Accordingly, we do not believe that section 11-46-9(1)(c) changes the result in this case.

This leaves the Waltons' arguments on waiver. They contend that the City failed to raise the public-duty doctrine at summary judgment. However, in its opening brief for summary judgment, the City stated: "Plaintiffs have not identified any duty owed by the City to them in this context, and case law set forth above holds that a municipality is not responsible for private violence." Though the City did not use the terms "public-duty doctrine," the City's argument plainly raised the issue of duty and Long's lack of specific duty to the Waltons here. Alternatively, the Waltons submit that the City waived the public-duty doctrine as an affirmative defense. We have not found a case indicating that the public-duty doctrine is an affirmative defense under Mississippi law. Rather, the doctrine appears to go towards an element of a plaintiff's *prima facie* case. *See Gant*, 786 So. 2d at 405–06 (holding sheriff was not liable for negligence because sheriff lacked duty to plaintiff). Nonetheless, even if the doctrine is considered an affirmative defense, we have "repeatedly rejected waiver arguments when a defendant raised an affirmative defense for the first time at summary judgment—or even later."

*Motion Med. Techs., L.L.C. v. Thermotek, Inc.*, 875 F.3d 765, 772 (5th Cir. 2017) (collecting cases). A defendant may avoid waiver "if (1) the defendant raised the affirmative defense 'at a pragmatically sufficient time,' and (2) the plaintiff 'was not prejudiced in its ability to respond.'" *Id.* at 771 (quoting *Lucas v. United States*, 807 F.2d 414, 418 (5th Cir. 1986)). As noted, the City raised Long's lack of a specific duty in its motion for summary judgment. Presenting the defense at summary judgment was at a sufficient time, especially when the Waltons did not clarify the exact tort claim they were bringing. *See Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 578 (5th Cir. 2009) (raising defense at summary judgment was appropriate). Also, there is no evidence that the Waltons were prejudiced. The Waltons had the opportunity to respond to the issue, and the district court even found that their MTCA claims should survive summary judgment. *See id.* ("No evidence indicates that Pasco was prejudiced by the late assertion or that Knoblauch intentionally delayed raising the defense to prejudice Pasco."). Waiver did not occur here.

In sum, we hold that Long did not owe a duty to protect the Waltons from Betts's drive-by shooting. As a result, the Waltons cannot sustain their negligence claims, and by proxy, their MTCA claims against the City. Thus, the City is entitled to sovereign immunity. *See Williams*, 313 So. 3d at 482 (citing MISS. CODE ANN. § 11-46-3). While the Waltons' case is undoubtedly tragic, they cannot impose liability on the City based on the facts of this case.

## V.

For the foregoing reasons, we DISMISS the Waltons' cross-appeal for lack of jurisdiction and REVERSE and RENDER summary judgment in the City's favor as to the MTCA claims.