# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
June 3, 2025

Lyle W. Cayce
Clerk

No. 24-10308

Raymond Vuoncino,

*Plaintiff—Appellant*,

*versus*

Forterra, Incorporated; United States Pipe
Fabrication, L.L.C.; Jeffrey Bradley; William Kerfin,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:21-CV-1046

Before Jones and Oldham, *Circuit Judges*, and Hendrix, *District Judge*.[*]

Per Curiam:

Raymond Vuoncino was a corporate-finance professional who worked for U.S. Pipe Fabrication, LLC. After Fabrication implemented new accounting practices to record inter-company sales, Vuoncino objected to those practices as potentially fraudulent. Vuoncino was soon fired from his

---

[*] United States District Judge for the Northern District of Texas, sitting by designation.

position at Fabrication by an executive of Fabrication's parent company, Forterra, Inc. Vuoncino sued Fabrication, Forterra, and two Forterra executives for violating the Sarbanes-Oxley Act's anti-retaliation provision. The district court dismissed Vuoncino's first amended complaint for failure to state a claim, denied Vuoncino's motion for leave to amend his complaint, and denied reconsideration of those orders. Vuoncino challenges those decisions on appeal. Because the complaint stated a plausible claim for relief as to the defendant Fabrication, we REVERSE IN PART the order dismissing the first amended complaint and REMAND for further proceedings. We AFFIRM in all other respects.

## I.

### A.

Because this appeal stems from an order granting motions to dismiss, "we accept all well-pl[ed] facts as true and view those facts in the light most favorable to the plaintiff." *See Richardson v. Axion Logistics, LLC*, 780 F.3d 304, 306 (5th Cir. 2015) (quoting *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 146 (5th Cir. 2010)). Vuoncino is a corporate-finance professional who, in 2013, "was retained as a consultant by" U.S. Pipe (USP) "to evaluate USP's fabrication business." Later that year, Vuoncino became a "direct employee of USP" and took the title General Manager for USP Fabrication, LLC (Fabrication). Fabrication and another entity, USP Pipe and Foundry Company (Foundry) are subsidiaries of USP Holdings, Inc. (Holdings). In late 2015, Vuoncino was "promoted to Vice President of Corporate Development for USP."

In 2016, Forterra, Inc. acquired Holdings. In the resulting corporate structure, Forterra wholly owned Holdings, which in turn wholly owned Fabrication and Foundry. After the acquisition, William Kerfin—Forterra's President of Water Pipe & Product, as well as Foundry's President—

promoted Vuoncino to Vice President of Operations for Fabrication. In that role, Vuoncino reported to the Senior Vice President of Operations for Fabrication.

At the time of the acquisition, Forterra was privately held. Following the acquisition, though, Forterra intended to go public, and Forterra's management wanted to increase earnings. But Fabrication's earnings disappointed Forterra's CEO, Jeffrey Bradley, who told Vuoncino that Fabrication was falling short by $25 to $35 million in yearly revenues.

Forterra went public in October 2016. In October and November, Vuoncino met with Kerfin and other Fabrication executives to discuss Fabrication's business plan. Kerfin decided to implement a plan to increase Fabrication's projected earnings by $12 million, which would be accomplished by altering the mechanics of inter-company product sales. In the initial proposed transaction structure, Kerfin planned for Foundry to lower the price it charged Fabrication for inter-company sales, resulting in higher profits on Fabrication's books. In the structure ultimately implemented, Foundry instead charged the normal price to Fabrication but later paid a rebate to Fabrication.

During this time, Vuoncino expressed concern about the propriety of these inter-company transactions and met with Fabrication employees to ensure that they agreed on the proper accounting method. All agreed that the proper method to account for the rebates would be to show the rebate on Fabrication's profit sheet but record a profit only once Fabrication sold the product to its customers. Vuoncino concurred with this method based on his extensive experience designing Fabrication's financial reporting, creating its profit-and-loss statements and revenue reports, and reviewing its balance sheets, profit-and-loss statements, and accounts-receivable reports. However, once the program began, Fabrication's Controller told Vuoncino

that the rebate would be "recognized each month as immediate profit" on Fabrication's profit-and-loss statement. Vuoncino told the Controller that he "object[ed] to this fraudulent accounting."

In December 2016, Vuoncino again raised his objections with Kerfin and other executives from Foundry and Forterra, telling the group that the rebate accounting was "incorrect" and "fraudulent." Despite Vuoncino's protests, the rebate program continued, and Vuoncino learned in January that Foundry was shipping to Fabrication products that Fabrication had never ordered. Vuoncino believed that these shipments were a way for Fabrication to "cook the books" and inflate its profits.

Believing that the rebate accounting constituted shareholder, mail, and wire fraud, Vuoncino again raised his objections in a January 2017 meeting with Kerfin and others. Vuoncino was then fired on January 20, 2017, during a meeting with Kerfin and a Forterra human-resources representative. The next day, Kerfin issued a written announcement stating that Vuoncino had "voluntarily left" Fabrication. Vuoncino also received a termination letter stating that his position as Vice President of Operations over Fabrication was being eliminated due to Forterra's "decision to restructure the Fabrication business within USP."

B.

Vuoncino filed a complaint of retaliatory discharge with the Occupational Safety and Health Administration (OSHA) on June 6, 2017. In that complaint, Vuoncino named "U.S. Pipe, Inc." and Forterra as defendants. Forterra responded—on behalf of itself, Holdings, and Fabrication—to Vuoncino's charges, which Forterra asserted were brought "against . . . Fabrication."

OSHA did not issue a final agency order within 180 days, so Vuoncino filed a complaint in the District of New Jersey. In that complaint,

Vuoncino named as defendants Forterra, Bradley, and Kerfin and brought a retaliation claim under the Sarbanes-Oxley Act (SOX), 18 U.S.C. § 1514A, as well as several state-law claims. Around two years later, the District of New Jersey permitted Vuoncino to file a first amended complaint, which added Fabrication as a defendant. Each defendant moved to dismiss on various grounds, including improper venue.

Vuoncino moved for leave to file a second amended complaint that added Foundry and Holdings as defendants. The same day, the District of New Jersey terminated the motion and transferred the case to the Northern District of Texas because a substantial part of the relevant events occurred in Texas. Following a motion to compel arbitration, the district court stayed all claims during the pendency of arbitration except for the non-arbitrable SOX claim, which it permitted to proceed. The next day, Vuoncino again moved for leave to file his proposed second amended complaint.

The district court denied Vuoncino's motion for leave to amend. The defendants then filed renewed motions to dismiss the SOX claim for failure to state a claim. The defendants' motions made several arguments, including that Vuoncino failed to sue his employer—which they argued is a requirement of a SOX retaliation claim—or plead that Forterra was the alter ego of his employer. The district court granted the defendants' motions to dismiss in full, concluding that Vuoncino failed to sue his employer and failed to state a claim based on alter-ego liability.

Vuoncino moved for reconsideration of the order granting the defendants' motions to dismiss and of the order denying his motion for leave to amend. The district court denied reconsideration. Vuoncino then initiated this appeal of the orders denying leave to amend, dismissing his SOX claim, and denying reconsideration.

## II.

We review the denial of leave to amend for an abuse of discretion. *Marucci Sports, LLC v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014). We likewise review the denial of reconsideration under Federal Rule of Civil Procedure 59(e) for an abuse of discretion, except to the extent that the denial involved reconsideration of a question of law, which we review de novo. *Walton v. City of Verona*, 82 F.4th 314, 321 (5th Cir. 2023).

We review de novo the district court's grant of the motions to dismiss. *Lampton v. Diaz*, 639 F.3d 223, 225 (5th Cir. 2011). To survive a motion to dismiss, "a complaint must present enough facts to state a plausible claim to relief." *Mandawala v. Ne. Baptist Hosp.*, 16 F.4th 1144, 1150 (5th Cir. 2021) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). We accept all well-pled facts as true and view them in the light most favorable to the plaintiff. *Hodge v. Engleman*, 90 F.4th 840, 843 (5th Cir. 2024). The facts must give rise to a conceivable, not merely plausible, claim to relief. *Mandawala*, 16 F.4th at 1150.

## III.

## A.

The district court did not abuse its discretion by denying Vuoncino's motion for leave to file a second amended complaint. The defendants argued in the district court that Vuoncino's claim was fatally flawed because, in his first amended complaint, he failed to sue his employer, which is a necessary element of a SOX retaliation claim. Forterra's OSHA response stated that Vuoncino worked for Fabrication but that he had, for some period of time, been employed by Holdings. But soon after Vuoncino filed suit in federal court, Forterra claimed that Foundry had been Vuoncino's employer. Vuoncino therefore sought to add both Foundry and Holdings as defendants because Forterra had taken the position, at various times, that one or more of

Fabrication, Foundry, and Holdings had employed him. The proposed amendments, however, were futile as untimely, so the district court did not err in rejecting them.

Under Federal Rule of Civil Procedure 15(a), a district court "should freely give leave" to amend "when justice so requires." However, a district court's discretion is guided by five factors when determining whether to grant leave: "1) undue delay, 2) bad faith or dilatory motive, 3) repeated failure to cure deficiencies by previous amendments, 4) undue prejudice to the opposing party, and 5) futility of the amendment." *SGK Props., LLC v. U.S. Bank Nat'l Ass'n for Lehman Bros. Small Balance Com. Mortg. Pass-Through Certificates, Series 2007-3*, 881 F.3d 933, 944 (5th Cir. 2018) (quoting *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004)). There must be a substantial reason to deny leave to amend after considering those five factors. *See id.*

Here, the district court denied Vuoncino's motion for leave to amend without providing reasoning. But in its order denying the motion for reconsideration, the district court explained that it had denied the motion for leave to amend, and was denying it again, because the proposed amendments were time-barred and therefore futile. The record supports this conclusion. As explained below, the amendments contained in Vuoncino's second amended complaint were futile because the amendments were untimely and do not relate back to the original complaint. In addition, Vuoncino was not entitled to equitable tolling.

First, the proposed amendments were made outside the statute of limitations. Two statutes of limitations could potentially apply to Vuoncino's SOX claim. Under 28 U.S.C. § 1658(a), unless otherwise specified, a four-year statute of limitations applies from the time that a cause of action accrues. However, a "private right of action that involves a claim

7

of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws" must be brought by the earlier of (i) two years after discovery of the facts underlying the violation, or (ii) five years after the violation took place. 28 U.S.C. § 1658(b). Vuoncino argues that the former, four-year statute of limitations should apply, while the defendants advocate for the shorter, two-year statute of limitations.

We need not decide which statute of limitations applies because, even assuming that the four-year limitations period applies here, Vuoncino's motion for leave was untimely. Vuoncino's claim accrued when he was terminated on January 20, 2017. *See Frame v. City of Arlington*, 657 F.3d 215, 238 (5th Cir. 2011) (en banc). The four-year limitations period therefore ended on January 20, 2021. 28 U.S.C. § 1658(a). But Vuoncino did not move for leave to file a second amended complaint until April 22, 2021, when he moved for leave in the District of New Jersey. After the District of New Jersey administratively terminated the motion and transferred the case to the district court, Vuoncino moved again on March 23, 2022. Even using the earlier date of Vuoncino's motion in the District of New Jersey, his motion was untimely.

Second, despite Vuoncino's arguments to the contrary, the proposed amendments did not relate back to the original complaint. Under Rule 15(c), an amendment that seeks to add a party "relates back to the date of the original pleading" if three conditions are met. First, the amendment must "assert[] a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B), (C). Second, the party proposed to be added in the amended complaint must have, within the Rule 4(m) period for serving summons and the complaint—here, 90 days—"received such notice of the action that it will not be prejudiced in defending on the merits." *Id.* at 15(c)(1)(C)(i). Third, within the Rule 4(m) period, that party must have

8

"[known] or should have known that the action would be brought against it, but for a mistake concerning the proper party's identity." *Id.* at 15(c)(1)(C)(ii). Here, Vuoncino filed the original complaint on February 21, 2018, so the 90-day period for serving the summons and the original complaint ended on May 22, 2018.

Vuoncino fails to satisfy the third condition. In determining whether Foundry and Holdings knew or should have known that they were not sued due to a mistake, we consider Vuoncino's conduct before and through the Rule 4(m) period. *See Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 553–54 (2010). Vuoncino filed his OSHA complaint against U.S. Pipe, Inc. and Forterra on June 6, 2017, in which he stated that he was a "direct employee" of U.S. Pipe, Inc. Forterra responded on behalf of itself, Holdings, and Fabrication. Forterra asserted that Vuoncino's claim of alleged retaliatory discharge was brought against Fabrication, that Vuoncino "was terminated" by Fabrication, that Fabrication's leadership included Vuoncino, and that the restructuring of Fabrication included elimination of Vuoncino's position. In addition, Forterra stated that Holdings had employed Vuoncino for some period of time. But when Vuoncino sued in federal court, he dropped U.S. Pipe, Inc. as a defendant and chose to sue only Forterra, Bradley, and Kerfin.

Based on this record, Foundry and Holdings would not have reasonably understood that Vuoncino's failure to add them as defendants was a mistake. Forterra's OSHA response repeatedly asserted that Vuoncino's claim of retaliation was directed at Fabrication's actions and that Fabrication and Holdings had employed Vuoncino. But Vuoncino did not sue Fabrication or Holdings in his original complaint or seek to add them as defendants before May 22, 2018. Had Vuoncino included Fabrication or Holdings as defendants during that time period, that may have put Foundry or Holdings on notice that Vuoncino made a mistake regarding which entity employed him. Instead, Vuoncino sued only Forterra and two Forterra

executives.   Foundry and Holdings thus had no reason to believe that Vuoncino intended to sue his employer as opposed to only the public, parent company and its officers.

Finally, Vuoncino was not entitled to equitable tolling of the limitations period.  A party seeking equitable tolling must show that (1) he had been "pursuing his rights diligently" and (2) "some extraordinary circumstance stood in his way and prevented timely filing." *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)).

Vuoncino argues that the district court should have applied equitable tolling because he failed to name Foundry and Holdings due to Forterra's representations in its OSHA response that Fabrication employed him, not due to his own mistake.  But Forterra stated in its OSHA response that Holdings employed Vuoncino at one point and asserted that Foundry was Vuoncino's true employer.  Despite this notice, Vuoncino did not move for leave to amend his complaint until April 2021, nearly three years later. Vuoncino's decision to wait almost three years before attempting to add Foundry and Holdings as defendants—a time period in which Vuoncino chose to amend his complaint without adding those defendants—is a delay of Vuoncino's own making that does not qualify for equitable tolling.  *Clarke v. Rader*, 721 F.3d 339, 344 (5th Cir. 2013) (citing *In re Wilson*, 442 F.3d 872, 875 (5th Cir. 2006)).

Because Vuoncino's proposed second amended complaint was time-barred and equitable tolling did not apply, his amendments were futile. Accordingly, the district court did not abuse its discretion by denying leave to amend the complaint.

B.

The district court dismissed Vuoncino's SOX claims against all defendants for failure to state a claim. The district court did so because, in its view, Vuoncino failed to sue his employer or to sufficiently plead that the defendants were his employer's alter ego. Although we affirm the dismissal of the SOX claim as against Forterra, Bradley, and Kerfin, we must reverse the dismissal as to Fabrication because the first amended complaint plausibly alleges that Fabrication employed Vuoncino.

To prevail on a SOX retaliation claim, an employee must allege, and ultimately prove by a preponderance of the evidence, that "(1) [the employee] engaged in protected activity; (2) the employer knew that [he] engaged in the protected activity; (3) [the employee] suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action." *Allen v. Admin. Rev. Bd.*, 514 F.3d 468, 475–76 (5th Cir. 2008). The whistleblowing employee must allege that there was an "employer-employee relationship between the retaliator and the whistleblower." *Lawson v. FMR LLC*, 571 U.S. 429, 441–42 (2014).

The first amended complaint alleges that Fabrication employed Vuoncino. The complaint claims that in 2013 "Vuoncino became a direct employee of USP" after he was initially hired as a consultant for the Fabrication business. Although Vuoncino did not specify in the first amended complaint whether "USP" refers to the U.S. Pipe business generally or to U.S. Pipe, Inc., the complaint later refers to "USP" as "Holdings[] and its subsidiaries, including" Fabrication and Foundry.

The complaint also specifies that after Vuoncino's hiring, he "thereafter worked for [Fabrication]" and "was given the title of General Manager for [Fabrication]." The complaint alleges that Kerfin promoted Vuoncino to "Vice President of Operations for" Fabrication and shortly

thereafter expanded Vuoncino's role to "include managing operations for the total network of" Fabrication branches. Vuoncino's direct supervisor was the "Senior Vice President of Operations" for Fabrication. As part of his job responsibilities, Vuoncino attended meetings to discuss Fabrication's business plan. Vuoncino also had daily involvement in Fabrication's functioning, including overseeing the "design and implementation" of a general ledger and financial-reporting package for Fabrication, creating new profit-and-loss statements, "[reviewing] Fabrication's balance sheets," financial statements, and accounts-receivable reports, and running Fabrication's daily revenue reports.

Then, when Vuoncino's employment was terminated, Kerfin's internal announcement stated that Vuoncino's position was eliminated because the company was "reorganizing the leadership of the USP Fabrication business." In a letter to Vuoncino, HR wrote that Vuoncino's position was being eliminated due to restructuring of Fabrication.

Viewing Vuoncino's allegations in the light most favorable to him, as we must in this procedural posture, the totality of the allegations plausibly allege that he was a Fabrication employee. Where a statute leaves "employee" undefined, as the statute does in this case, the Supreme Court has explained that courts should look to "the conventional master-servant relationship as understood by common-law agency doctrine." *Juino v. Livingston Par. Fire Dist. No. 5*, 717 F.3d 431, 434 (5th Cir. 2013) (citation omitted); *see also Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992). In determining whether a party is an employee under common-law agency doctrine, courts should "consider the hiring party's right to control the manner and means by which the product is accomplished." *Darden*, 503 U.S. 318, 323 (1992) (quoting *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 751 (1989)). The "factors relevant to this inquiry" include "the skill required; the source of the instrumentalities and tools; the location of

the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party." *Id.* (quoting *Reid*, 490 U.S. at 751–52).

Here, Vuoncino alleges that he "worked for" Fabrication, held specific managerial and executive positions "for" and "over" Fabrication, supervised all Fabrication branches, directly reported to a senior vice president of Fabrication, worked daily on managing Fabrication's financials, and that his position was eliminated due to restructuring within Fabrication. These allegations set forth facts about the terms and conditions of Vuoncino's employment, not legal conclusions.

In addition, the documents attached to Forterra and Fabrication's motion to dismiss did not justify dismissal of the claim against Fabrication. Forterra and Fabrication's motion to dismiss appended several documents, including several of Vuoncino's W-2s, in support of their argument that Fabrication did not employ Vuoncino. But even assuming that the district court properly considered these documents at the motion-to-dismiss stage, Vuoncino's "well-ple[d] factual allegations enjoy a presumption of truth," even if the documents attached to the motion to dismiss conflict with the facts alleged in the complaint. *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 622 n.3 (5th Cir. 2018) (citation omitted). Taking Vuoncino's allegations as true, they are sufficient to raise a plausible inference—despite the partially conflicting evidence presented in the W-2s—that Fabrication employed Vuoncino. *See Juino*, 717 F.3d at 434.

This Court's decision in *Moody v. American National Insurance Co.*, 842 F. App'x 875 (5th Cir. 2021), is not to the contrary.[1] There, we determined that the plaintiff, an employee of a contractor for a public company, could not sue the public company for retaliation under SOX because the public company did not employ him. *Moody*, 842 F. App'x at 878. Fabrication relies on *Moody* to argue that Vuoncino's allegations that he worked "for" and "over" Fabrication fail to plead that he was "an employee" of Fabrication. But while *Moody* established that the whistleblower "must be an employee of the retaliator," it did not hold that a plaintiff must allege the specific words "employed by" or "an employee of" or else doom his complaint. *See id.* Indeed, "pleading standards don't demand such precision in terminology or any magic words." *Boudreaux v. La. State Bar Ass'n*, 3 F.4th 748, 756 (5th Cir. 2021). Vuoncino was not required to plead the specific words "employee of" or "employed by" to state a SOX claim against Fabrication. Taking his allegations as true, Vuoncino pleads sufficient facts to raise a plausible inference that Fabrication employed him. *See Juino*, 717 F.3d at 434. Thus, the district court erred by granting the motion to dismiss the SOX claim against Fabrication.

However, the district court correctly dismissed the SOX claim against the remaining defendants. Beginning with Forterra, Vuoncino contends that he has adequately pled that Forterra is the alter ego of Fabrication. That parent corporations are not liable for the conduct of their subsidiaries is a "bedrock principle of corporate law." *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 447 F.3d 411, 416 (5th Cir. 2006). But a court may hold a parent liable for the actions of its subsidiary in "exceptional cases," where the parent "exercised complete control over the [subsidiary] with

---

[1] Although this decision is unpublished and therefore non-precedential, we cite it to show consistency among our rulings. *See* 5th Cir. R. 47.5.4.

14

respect to the transaction at issue" and "such control was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *Id.* (quoting *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 359 (5th Cir. 2003)).

Vuoncino's allegations of Forterra's alter-ego liability fall well short of this demanding standard. Vuoncino pleads that Forterra "exhibited . . . a high degree of control over" Fabrication, "operated" Fabrication "as a department of the parent company," and "acted directly or indirectly on behalf of or in the interest of" Fabrication such that "Fabrication's corporate veil should be pierced." In addition, Vuoncino alleges that "Forterra at all relevant times was . . . Fabrication's alter ego as a result of . . . forcing the subsidiary to take the complained-of action with regard to the rebate program." These allegations effectively give a "recitation of" the basic requirements of alter-ego liability, but they do not set forth factual allegations sufficient to form the basis of an alter-ego claim. *See McIntyre v. Castro*, 670 F. App'x 250, 251 (5th Cir. 2016).

Vuoncino also contends that he can sue Forterra directly without establishing any employment relationship. But in light of controlling Supreme Court precedent and the statutory language at issue, we reject Vuoncino's argument. First, Supreme Court precedent provides that there must be an "employer-employee relationship between the retaliator and the whistleblower." *Lawson*, 571 U.S. at 441–42; *see also Moody*, 842 F. App'x at 878. Second, as noted in *Lawson*, the SOX retaliation provision repeatedly references the protected activities of an employee against "the employer" for which the employee works. 18 U.S.C. § 1514A(a)(1)(C), (a)(2), (b)(2)(B); *see also Lawson*, 571 U.S. at 442–43. Third, the remedial scheme of SOX's retaliation provisions underscores that the retaliator must be the plaintiff's employer: the primary remedies that SOX affords to successful whistleblowers are reinstatement to the employee's position and backpay, *see*

18 U.S.C. § 1514A(c)(2)—remedies that only an employer, not a non-employer affiliate, could provide.

To be sure, additional allegations that an affiliate controlled Vuoncino's employer, or that he had multiple employers, could permit Vuoncino to sue Forterra in addition to Fabrication. For example, had Vuoncino sufficiently alleged that Forterra completely controlled Fabrication and thus was the alter ego of Fabrication, then he could have sought to hold Forterra liable for the acts of Fabrication. *See Bridas S.A.P.I.C.*, 447 F.3d at 416. In such a scenario, Forterra—as the controlling entity—would have been the party that injured Vuoncino and been able to offer him relief. *See id.* Or, Vuoncino could have alleged under a joint-employer theory that Forterra also employed him, which would likewise be consistent with SOX's statutory scheme requiring an employer-employee relationship. *See, e.g.*, *Gray v. Powers*, 673 F.3d 352, 355 (5th Cir. 2012) (explaining the joint-employer theory). But Vuoncino did not bring any such allegations, so his attempt to sue Forterra without establishing an employment relationship must fail.

Finally, the SOX claim against the individual defendants is also deficient. In relevant part, SOX provides that "[n]o [public] company[,] . . . including any subsidiary or affiliate whose financial information is included in the consolidated financial statements of such company, . . . or any officer, employee, contractor, subcontractor, or agent of such company . . . may [retaliate] against an employee in the terms and conditions of employment because of any lawful act done by the employee." 18 U.S.C. § 1514A(a). Here, Vuoncino asserts that because he can sue Forterra, he may also sue Kerfin and Bradley because they are officers or agents of Forterra. But because Vuoncino's SOX claim against Forterra fails, so do his claims against the officers "of such company." *Id.*

Accordingly, the district court did not err in granting Bradley and Kerfin's motion to dismiss or Fabrication and Forterra's motion to dismiss as it applied to Forterra. But we must reverse the dismissal of the SOX claim against Fabrication in light of the well-pled allegations of employment.

C.

Finally, the district court did not abuse its discretion by denying reconsideration. In his motion for reconsideration, Vuoncino moved to amend the judgment under Rule 59(e) and for relief from the judgment under Rule 60(b). Both rules provide similar relief, but Rule 59(e) presents a lower hurdle for Vuoncino, so we consider only whether the district court abused its discretion under Rule 59. *See Frew v. Young*, 992 F.3d 391, 397 (5th Cir. 2021).

Motions under Rule 59(e) "'are for the narrow purpose of correcting manifest errors of law or fact or presenting newly discovered evidence'—not for raising arguments 'which could, and should, have been made before the judgment issued.'" *Rollins v. Home Depot USA*, 8 F.4th 393, 396 (5th Cir. 2021) (quoting *Faciane v. Sun Life Assurance Co. of Can.*, 931 F.3d 412, 423 (5th Cir. 2019)). Vuoncino's motion rehashed the same "arguments raised and rejected prior to judgment," so "the district court did not abuse its discretion in denying" the motion. *Edionwe v. Bailey*, 860 F.3d 287, 295 (5th Cir. 2017).

Moreover, the motion did not present any newly discovered evidence. Instead, the motion attached documents from 2013 and 2017 that were in Vuoncino's possession before he ever filed suit in federal court. Vuoncino could have raised arguments based on these documents in his motion-to-dismiss response, but he failed to do so. Thus, the district court did not abuse its discretion by denying Vuoncino's motion for reconsideration.

24-10308

## IV.

We AFFIRM the district court's order denying reconsideration. We also AFFIRM IN PART the district court's order dismissing the plaintiff's complaint. We REVERSE the dismissal of the SOX claim against Fabrication. Therefore, we AFFIRM in part, REVERSE in part, and REMAND for further proceedings.